Wm. O'Donell, Inc., Plaintiff-Appellee, v. Bowfund Corporation, Defendant-Appellant.

**Gen. No. 52,239.**

First District, Fourth Division.

March 19, 1969.

William G. Myers, Rothschild, Hart, Stevens & Barry, of Chicago, for appellant.

Sidley & Austin, of Chicago (Robert A. Downing and Alexander C. Allison, of counsel), for appellee.

MR. JUSTICE STAMOS delivered the opinion of the court.

On May 30, 1962, William O'Donell, Inc. and the Bowman Dairy Company * (hereinafter referred to as defendant) entered into an agreement whereby plaintiff would lease eight stainless steel tank trailers and eight tractor-trucks to defendant for the period of five years for a rental price of $6,000 per month.

Plaintiff brought suit against defendant to obtain reimbursement for the State of Illinois use tax paid with respect to the aforementioned equipment. Plaintiff claimed a right to such reimbursement from defendant by virtue of the provisions of the lease agreement.

This appeal is taken from an order granting plaintiff's motion for summary judgment in the amount of $6,799.42 and costs. The issue presented for review is whether the tax for which plaintiff seeks reimbursement is within the lease provision relied upon by plaintiff.

The lease in general reflected the rental, provisions regarding maintenance, repairs, insurance, employment of drivers, a provision allowing defendant to terminate the lease on 30 days' notice and related matters not pertinent to the issue before this court.

The provision of the lease which is the crux of this appeal is paragraph three (3) which provides as follows:

"3. Lessee (defendant) shall pay all license fees, taxes, fuel, oil and greasing expenses arising out of its use or operation of the equipment."

---

* The defendant-appellant, Bowfund Corporation, was formerly known as the Bowman Dairy Company.

The parties embarked upon their respective obligations under the lease for a period of two and one-half years until January 1, 1965, at which time plaintiff terminated the lease at the request of defendant.

Beginning in March of 1965, correspondence was exchanged between plaintiff and the Department of Revenue, State of Illinois, concerning the liability of plaintiff to pay the Illinois use tax on all of the leased equipment which plaintiff had purchased outside the State of Illinois. Plaintiff on June 23, 1965, paid the sum of $6,181.29 plus the sum of $618.13 as penalty for the use tax to the Department of Revenue, State of Illinois.

On several occasions after termination of the lease and before plaintiff made this payment, plaintiff notified defendant that under the provision of their lease agreement, specifically paragraph three (3), defendant was obliged to make the payment or in the alternative to reimburse plaintiff if plaintiff made the payment. Defendant refused to make any payment and the present litigation ensued.

Defendant in its Answer to plaintiff's Complaint denied that its possession of the equipment under the lease agreement constituted a taxable event or transaction for which it could be adjudged liable for the payment or reimbursement of any use tax, or that paragraph three (3) of the lease imposed an obligation upon defendant to pay the use tax.

Defendant argues that the use tax for which plaintiff seeks reimbursement is not a tax ". . . arising out of its (defendant's) use or operation of the equipment" and if plaintiff had purchased the equipment in Illinois a sales tax would have been imposed on plaintiff at the time the purchase was made.

The purpose of the use tax is to prevent the evasion of the Retailers' Occupation Tax when purchases of tangible personal property used in Illinois are made outside the State and to protect the local retail mer-

chant against diversion of his business to out-of-state sellers. Turner v. Wright, 11 Ill2d 161, 142 NE2d 84 (1957).

The issue before this court is whether the use tax is a tax ". . . arising out of its (defendant's) use or operation of the equipment." We think not.

"Use" is defined for purposes of the Use Tax Act, Ill Rev Stats, c 120, § 439.2 (1961) as follows:

> " 'Use' means the exercise by any person of any right or power over tangible personal property incident to ownership of that property. . . ."

Plaintiff was obligated to pay the Illinois use tax as the "legal user" of the equipment within the terms of the statute. Plaintiff argues however, that it is entitled to reimbursement by the terms of the lease agreement.

■ ■ The lease agreement must, if at all possible, be construed so as to give effect to the intention of the parties at the time of contracting. Cedar Park Cemetery Ass'n v. Village of Calumet Park, 398 Ill 324, 75 NE2d 874 (1947). The meaning of an unambiguous agreement is to be determined from the language of the agreement and it is not the province of the court to make an agreement for the parties or to add terms. Diederich v. Rose, 228 Ill 610, 81 NE 1140 (1907). Plaintiff admits in its brief that the language of the lease agreement is clear and unambiguous.

■ ■ The use tax is not a tax which arises out of the use or operation of tangible personal property, but rather it is a tax placed upon the exercise of powers or rights incident to ownership. A lessee merely has the right to physical possession of the leased equipment during the term of the lease. The rights of title and ownership in leased equipment remain in the lessor as stated in 8 Am Jur2d, Bailments, § 70:

> "The typical bailment does not involve any change in the title or ownership of the bailor in the subject

110

matter but only a change with respect to the possession and the interests and rights dependent thereon."

██ In his affidavit Mr. O'Donell, president of plaintiff, stated that pursuant to the agreement with defendant, plaintiff "purchased certain tractor-trailer combinations as set forth in the May 30, 1962 agreement." On cross-examination he testified that from April to July 1, 1962, two Mack tractors and two of the trailers were used by plaintiff for hauling milk from Wisconsin to Chicago. If plaintiff had purchased the new equipment in Illinois it would have been obligated to pay the Retailers' Occupation Tax whether it operated the equipment in Illinois through its own employees or whether it leased the equipment to others. Since it appears that the new equipment (twelve pieces) was purchased outside of Illinois, the "use" by plaintiff was the exercise of ownership by leasing. Similarly by leasing the other equipment (four pieces) for operation in Illinois plaintiff lost the exemption it had under section 3 of Illinois Use Tax Ill Rev Stats, c 120, § 439.3 (1961).* Since the Illinois use tax is a tax on the exercise of the rights and powers incident to ownership, we cannot find that defendant in agreeing to pay ". . . all license fees, taxes, fuel, oil and greasing expenses arising out of its use or operation of the equipment" undertook to pay the use tax. Plaintiff became obligated to pay the use tax as soon as it brought the equipment into Illinois and delivered it to the defendant pursuant to the agreement. Defendant did not agree to pay taxes for which plaintiff was obligated by reason of its ownership and use but only taxes arising out of defendant's use and operation.

---

* The pertinent part of this section provides:

"To prevent actual or likely multistate taxation, the tax herein imposed shall not apply to the use of tangible personal property . . . which is acquired outside this State and which is moved into the State for use as rolling stock moving in interstate commerce."

It should be noted that the equipment lease agreement was merely a month-to-month lease since the defendant had the right under the terms of the lease to terminate the lease by giving 30 days notice. To assume that the defendant would agree to pay the use tax based upon the entire purchase price of the equipment would be absurd. The plaintiff's conduct was also inconsistent with the contention that the defendant agreed to pay the use tax. The question of the use tax did not arise until some months after the lease was terminated. If the parties had intended that the defendant was to pay the use tax, plaintiff as the "legal user" would have filed the use tax return at the inception of the agreement and billed the defendant in the normal course of business.

Since defendant did not move in the trial court for a dismissal of the suit for failure to state a cause of action, we cannot consider its request that we dismiss the case.

The judgment is reversed and the cause remanded with directions to deny the motion of plaintiff for summary judgment and to proceed in a manner not inconsistent with this opinion.

Reversed and remanded with directions.

DRUCKER, P. J. and ENGLISH, J., concur.

## ON REHEARING

Having reconsidered this cause we adhere to our opinion as previously filed.

Reversed and remanded with directions.