CAROL GAFFNEY, Plaintiff-Appellant, *v.* WILLIAM J. BURNS DETECTIVE AGENCY INTERNATIONAL, INC., Defendant-Appellee.

(No. 56541;

First District (1st Division)—June 25, 1973.

Roger J. Boylan, of Chicago, for appellant.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago, (D. Kendall Griffith and Paul L. Pawlowski, of counsel,) for appellee.

Mr. PRESIDING JUSTICE BURKE delivered the opinion of the court:

This is an appeal from an order granting summary judgment in favor of defendant, William J. Burns Detective Agency International, Inc. (hereinafter referred to as "Burns") and against plaintiff, Carol Gaffney. Plaintiff appeals.

On May 14, 1969, plaintiff was assaulted by two unknown persons in the parking lot of her employer, National Biscuit Co., located at 7300 S. Kedzie Avenue, Chicago, Illinois.

Plaintiff subsequently commenced an action against both defendant, Burns and her employer, National Biscuit Co., seeking to recover for the injuries she sustained as a result of the assault. Plaintiff alleged in her complaint that defendant Burns was liable by reason of its alleged negligent failure to adequately perform its guard service under a contract with plaintiff's employer, National Biscuit Co.

The contract between defendant Burns and plaintiff's employer, National Biscuit Co., provided in pertinent part:

"Whereas, Agency (Burns) maintains a plant protection service and has facilities for the surveillance and protection of property against fire, theft, pilferage, malicious injury and destruction, and Whereas, National desires Agency to supply such protection services to National's Bakery at 7300 S. Kedzie Ave., Chicago, Illinois property;

Now, therefore, National and Agency do mutually agree as follows:

1) The Agency will furnish uniformed guard plant protection (armed, if necessary) service for the proper protection of National's Bakery at 7300 S. Kedzie Ave., Chicago, Ill. property; the specific number, principal posts and hours of duty of guard personnel to be agreed upon between the parties hereto from time to time.

2) The Agency will furnish the guard personnel to provide such protection, complete with uniforms and necessary equipment. The guard personnel shall perform the following duties:

(a) Protect the property from fire, accident, theft, damage and trespass.

(b) Permit only duly authorized persons to enter the premises.

(c) Make regularly scheduled tours of the premises, checking all gates, doors, windows, lights and registering such tours on Detex or such other watch clock stations as may be provided by National.

(d) Report any unusual incidents or hazardous conditions as soon as practicable to representatives designated by National.

(e) Submit a written report covering all incidents or hazardous conditions at the conclusion of each tour.

(f) When requested, other miscellaneous duties under the direction of National's local plant management.

\* \* \*

4) Agency shall assume the entire responsibility and liability for any and all damage and injury of any kind or nature whatsoever (including death resulting therefrom) to all persons, whether employees of Agency or otherwise, and to all property, caused by, resulting from, arising out of, or occurring in connection with either (1) the performance of this Agreement or (2) the presence of any persons, except an employee of National in the performance of his duties, in, on or about any part of National's premises, at or with the invitation, express or implied, of Agency, its agents, servants or employees; and if any person, including damage or injury (including death resulting therefrom) as hereinabove described, whether such claim be based upon National's alleged active or passive negligence, or participation in the wrong, or upon any alleged breach of any statutory duty or obligation on the part of National, Agency agrees to indemnify and save harmless, National, its agents, servants and employees from and against any and all loss, expense, damage or injury that National may sustain as a result of any such claim and Agency agrees to assume, on behalf of National and at its demand, the defense of any action at law or in equity which may be brought against National upon such claim and to pay on behalf of National, upon its demand, the amount of any judgment that may be entered against National in any such action.

\* \* \*

6) Without limiting responsibility of the Agency for the proper conduct of the guards and the protection of the Protected Property the conduct of the guards is to be guided by a set of standard rules agreed upon between National and the Agency \* \* \*.
7) The Agency is responsible for the direct supervision of the guards \* \* \*.
8) The Agency agrees that the plant protection services covered by this contract shall be performed by qualified, careful and efficient employees in strictest conformity with the best practices and such standards as may be prescribed by National from time to time \* \* \*."

On July 23, 1971, defendant Burns filed a motion for summary judgment and attached thereto a copy of the agreement between Burns and National and also an affidavit of an administrative assistant of Burns, Donald J. Kundrot. In its motion for summary judgment defendant

Burns stated that under the terms of the contract, it had no duty to protect users of the parking lot and that its obligation to furnish protection under the agreement extended only to the property of National Biscuit Co. The affidavit of Mr. Kundrot further stated that the guards provided by Burns pursuant to the agreement had no duties, instructions or orders relative to the protection of persons using the parking lot.

On August 6, 1971, the trial judge entered an order granting leave to plaintiff to file a second amended complaint and also providing that defendant Burns' motion for summary judgment would stand as to plaintiff's second amended complaint.

The plaintiff's second amended complaint also relied upon the contract between Burns and National and alleged that under this agreement Burns had a duty to protect persons lawfully on the premises of National, as well as the physical property, from unlawful conduct including assaults by unknown persons in the parking lot; that under the agreement Burns was obliged to properly perform the guard service despite the absence of any special instructions from National; that the plaintiff as an employee of National was a person whom Burns could reasonably have foreseen would be endangered by the careless performance of its guard service agreement and that she relied on Burns to properly perform its guard service. This complaint further alleged that Burns had a duty to exercise care in the performance of the agreement so as not to cause injury to persons for whose safety the agreement was made, including the plaintiff; that Burns in disregard of this duty, failed to furnish guards for the parking lot, failed to maintain a sufficient number of competent guards in the area and failed to maintain a closed circuit television surveillance in the parking lot area and as a result of which, plaintiff was injured.

Plaintiff also filed on August 6, 1971, an answer to defendant Burns' motion for summary judgment. Plaintiff asserted, *inter alia*, that there were genuine issues of fact as to the scope and extent of the duties of Burns with respect to the protection of persons on the premises of National. Plaintiff maintained that by virtue of the provisions of the agreement between Burns and National, considering the customary meaning of the terms used in the contract and general practices in the trade, there existed genuine issues of fact and therefore summary judgment was not warranted.

The plaintiff's answer to defendant Burns' motion for summary judgment also attached an affidavit of plaintiff's attorney reciting information obtained from one James O'Hara, whom plaintiff's attorney stated was "a long time executive in watch service companies, whose personal

affidavit could not be secured because of the shortness of time." This affidavit asserted that the term "plant protection service" as used in the contract between defendant Burns and National Biscuit Company means protection of a plant by guards and other means. The term "plant" includes not only the buildings and the physical contents, but also persons lawfully on the premises. It was also asserted that a recognized function of a plant protection service is to guard against wrongful acts or conduct by or involving persons who occupy the premises which are being guarded and that this includes acts committed by trespassers. The affidavit further asserted that a watch service company which includes in its agreement with the owner a "hold harmless" agreement by which it agrees to hold harmless the owner from injury of losses which occur by reason of the performance or lack of performance of the plant protection agreement does so only if it retains the overall responsibility for the performance of the duties under the contract.

On August 13, 1971, the trial court, after having heard the arguments of counsel, granted summary judgment in favor of defendant Burns and against plaintiff. The Court also entered an express finding under Supreme Court Rule 304 (Ill. Rev. Stat. 1971, ch. 110A par. 304) that there was no just reason for delaying enforcement or appeal. Plaintiff appeals.

Plaintiff argues that the law is well established in Illinois and elsewhere that a person who is injured by reason of the negligent performance of a "duty assumed" under a contract with a third person has a right of action against the contractor where the injured person is one whom the contractor could have reasonably foreseen would be endangered by his negligent performance.

In our opinion, the paramount question which we must decide is whether, under the terms of the contract, Burns assumed the duty to protect persons lawfully on National's property from assaults by third persons.

An examination of the contract reveals that Burns' duty is set forth in clear, simple language. The contract states that because Burns "* * * maintains a plant protection service and has facilities for the surveillance and protection of property against fire, theft, pilferage, malicious injury and destruction * * *" and because National desired Burns to "* * * supply such protection services to National's property * * *" the parties mutually agree that Burns "* * * will furnish uniformed, guard plant protection (armed, if necessary) service for the proper protection of National's * * * property * * *."

■■ The issue of whether an ambiguity exists in a contract is a question of law. *Bertlee Co., Inc. v. Illinois Publishing & Printing Co.*, 320 Ill.App.

490, 52 N.E.2d 47; *Coney v. Rockford Life Insurance Co.*, 67 Ill.App.2d 395, 214 N.E.2d 1.

■■ In the present case, Burns agreed to protect National's property against certain specified hazards. The contract refers exclusively to "protection of property" and "such protection." We are of the opinion that in the absence of any language referring to the protection of the safety of individuals, the trial court properly held that the contract was unambiguous and found that the duty it imposed on Burns was for the property only.

As the Illinois Supreme Court stated in *Schek v. Chicago Transit Authority*, 42 Ill.2d 362, 364, 247 N.E.2d 886, 888:

> "The primary object in construing a contract is to give effect to the intention of the parties involved. Their intent must be determined solely from the language used when no ambiguity in its terms exist, and a strict construction of that language which reaches a different result from that intended by the parties should not be adopted. *Schiro v. Gould & Co.*, 18 Ill.2d 538."

See also *Wm. O'Donell, Inc. v. Bowfund Corp.*, 114 Ill.App.2d 107, 252 N.E.2d 53.

■■ In the present case, the contract between Burns and National is unambiguous and therefore the parties' intent must be determined solely from the language used. Plaintiff in the course of her argument relies on the itemization of duties to be performed by guard personnel as delineated in paragraph 2 of the contract. Paragraph 2, however, does not define the service which Burns contracted to perform. Instead it itemizes the methods by which that service will be performed. The preamble and paragraph 1 of the contract define the service which Burns is to perform, namely, the protection of National's property.

Paragraph 2 of the contract provides that Burns "*   *   *   will furnish the guard personnel to provide such protection   *   *   *" and that the guard personnel shall perform certain itemized duties. In our opinion the phrase "such protection" refers to the protection described in the preamble and paragraph 1—the protection of National's property. The itemized list represents the method by which "such protection" is to be accomplished.

Moreover, the itemized list of duties indicates that the ultimate duty of Burns is to protect property. For instance paragraph 2(a) states "protect the property from fire, accident, theft, damage and trespass." The fact that some of the items listed in paragraph 2 are consistent with both protecting property and protecting individuals does not indicate that Burns contracted to protect individuals.

482

Plaintiff also in her argument refers to the hold harmless clause contained in paragraph 4. In our opinion that clause, however, does not define the service Burns contracted to perform. It concerns only the circumstances under which Burns is required to indemnify National. By its nature it concerns only Burns and National and cannot create third party rights.

Plaintiff also argues that in the watch service industry, according to plaintiff's counter affidavit, the term "plant protection service" includes not only protection of physical property from damage or injury but the persons who are lawfully within the premises of the plant.

■■ However, in the present case, National and defendant Burns did not rely on the usage and custom of the watch service industry in defining their mutual obligations. They reduced their agreement to writing and in our opinion the resulting contract is plain and complete. The contract specifically defines the mutual duties and limits Burns' duty to the protection of property against fire, theft, pilferage, malicious injury and destruction. We are of the opinion that plaintiff's argument is without merit because, as this court stated in *Sturgeon v. Jacobs*, 343 Ill.App. 460, 99 N.E.2d 635 (abstract) where "\* \* \* [T]he written contract between plaintiff and defendants is plain and complete in its terms, \* \* \* the alleged custom or usage cannot be set up to vary or control the express terms of the contract."

■■ Plaintiff also questions the reasonableness and wisdom of National's contracting to protect its property and not the safety of individuals. However, in construing the contracts of competent parties, the court is not concerned with the wisdom of the contract. As the Illinois Supreme Court stated in *Green v. Ashland State Bank*, 346 Ill. 174, 183, 178 N.E. 468, 472:

> "If the words of a contract are plain and unambiguous the contract must be so construed as to give effect to the plain and obvious import of the language used. (*Bearss v. Ford*, 108 Ill. 16.) When the parties are competent to contract, with the wisdom or folly of their contracts, made for a consideration and without fraud, courts of law have no concern. (*Florida Ass'n v. Stevens*, 61 Fla. 508; *Mizell Live Stock Co. v. McCaskill Co.* 59 id. 322.)"

■■ We are of the opinion that the trial court was correct in holding the contract between Burns and National is not ambiguous and only imposed on Burns the duty to protect National's property. As a consequence, Burns was under no duty to protect plaintiff from harm by unknown third persons. In the present case, there are no genuine issues

with respect to any of the material facts and therefore the trial judge properly entered summary judgment in favor of defendant Burns. (*Novak v. Equitable Life Assur. Society,* 101 Ill.App.2d 392, 243 N.E.2d 269.) The judgment is affirmed.

Judgment affirmed.

GOLDBERG and EGAN, JJ., concur.