JAMES D. ROGERS, M.D., Plaintiff-Appellant, *v.* ROBSON, MASTERS, RYAN, BRUMUND AND BELOM, Defendant-Appellee.

Third District   No. 78-240

Opinion filed July 27, 1979.—Rehearing denied September 6, 1979.

ALLOY, J., dissenting.

James D. Rogers, M.D., of Joliet, for appellant, *pro se.*

James Garrison, of Joliet, for appellee.

Mr. JUSTICE STOUDER delivered the opinion of the court:

Plaintiff, James Rogers, M.D., appeals from an order granting summary judgment in favor of defendant, Robson, Masters, Ryan, Brumund & Belom, a partnership of attorneys. A medical malpractice action had been filed against the plaintiff. The defendant was retained by plaintiff's malpractice insurance carrier to defend the action. The defendant did enter the case on behalf of the plaintiff and eventually settled the action prior to trial. The settlement occurred without the consent or knowledge of the plaintiff Rogers. Rogers filed the instant action against the attorneys, asserting that they wrongfully settled the action without his express permission or knowledge. After submission of affidavits, the trial court granted summary judgment for the defendant.

On this appeal a number of issues are raised for our consideration. First, does a question of fact exist as to defendant's authority to settle the

malpractice action without Rogers' consent; second, does public policy prohibit settlement without Rogers' consent; third, did the trial court err in awarding summary judgment prior to discovery; fourth, by settling without the express consent of the plaintiff, did the defendant breach a duty to plaintiff that existed independent of the contract of insurance and finally, was Rogers damaged as a result of the defendant's actions.

On February 4, 1972, a complaint was filed against Dr. Rogers, alleging negligence in the care and treatment of one of his patients (named Quilico). Dr. Rogers' insurance carrier, Employer's Fire Insurance Company, a member of Commercial Union Assurance Companies, retained the defendant law firm to represent Dr. Rogers in the malpractice action instituted by Quilico. During the pendency of the Quilico action, Dr. Rogers informed the Robson law firm that he would not consent to a settlement of that action and did not wish it to be settled.

On September 17, 1974, and prior to trial, the defendant settled the Quilico action for the sum of $1,250. Settlement was made on the basis of a convenant not to sue and liability as to Dr. Rogers was expressly denied. Rogers' consent for the settlement was not obtained nor was he informed prior to settlement of the intention of the defendant law firm to settle the action.

Rogers initially filed an action against the defendant on November 17, 1976, alleging a wrongful settlement of the Quilico action without his consent. The trial court dismissed that action on its own motion on November 29, 1976, because of a deficiency in the ad damnum request for damages in the complaint. (See Ill. Rev. Stat. 1977, ch. 110, par. 34.) This court upheld the dismissal, but declared the dismissal would be one without prejudice.

The present action was filed on October 13, 1977, alleging essentially the same facts and cause of action as in the previous suit. The defendant moved for summary judgment and both of the parties submitted affidavits on the summary judgment issue. The affidavits specified that Dr. Rogers was insured by the insurer from June 1, 1970, to June 1, 1971, under Policy FW-2864-94, which is the policy covering the alleged malpractice action involving Quilico. It was also specifically established that Dr. Rogers was not insured under that policy, or otherwise, by the insurer, for any period after June 1, 1971.

The policy involved, in pertinent part, contains the following provision with respect to settlement of claims or suits:

"The company will pay on behalf of the insured all sums which the insured shall become obligated to pay as damages * * * and the company shall have the right and duty to defend any suit against the insured seeking such damages, even if any of the allegations of the suit are groundless, false, or fraudulent, and may make such

investigation and with the written consent of the insured such settlement of any claim or suit as it deems expedient, but the company shall not be obligated to defend any suit after the applicable limits of the company's liability has been exhausted * * * nor shall the written consent of a former insured be required before the company may make any settlement of any claim or suit even if such claim or suit was made, proffered or alleged while such former insured was an insured under this policy."

■■ It is first contended by plaintiff that a question of fact exists as to whether the insurance policy granted the defendant the authority to settle the Quilico action. Insurance policies are contracts, and the general rules of construction which apply to other contracts also apply to insurance policies. As stated in *Dawe's Laboratories, N.V. v. Commercial Insurance Co.* (1974), 19 Ill. App. 3d 1039, 1048, 313 N.E.2d 218:

"In considering the language of the policy of insurance * * * our primary objective must be to ascertain and to give effect to the intention of the parties as therein expressed. Where there is no ambiguity in the policy provision, the intent of the parties 'must be determined solely from the language used.' (*Schek v. Chicago Transit Authority*, 42 Ill. 2d 362, 364, 247 N.E.2d 886.) In this regard, insurance policies must be treated like any other contract and '[w]here the language in a policy is clear and unambiguous, it must be taken in its plain, ordinary and popular sense.' (*Hartford Accident & Indemnity Co. v. Case Foundation Co.*, 10 Ill. App. 3d 115, 121, 294 N.E.2d 7.) 'The issue of whether an ambiguity exists in a contract is a question of law.' *Gaffney v. Burns Detective Agency*, 12 Ill. App. 3d 476, 480, 299 N.E.2d 540 and cases there cited."

We note that in *Hartford Accident & Indemnity Co. v. Case Foundation Co.* (1973), 10 Ill. App. 3d 115, 121, 294 N.E.2d 7, the court also notes that "[c]onstruction of an insurance policy presents only a question of law." Contrary to plaintiff's assertion in the instant case, no question of fact exists as to the insurance contract's interpretation. The construction and interpretation of the contract in this respect is a question of law for the court and not for the trier of fact.

The trial court, in the instant case, clearly found, as a matter of law, that the contract provided for, and authorized, the settlement of the Quilico action without the written consent of the plaintiff. That decision, and the construction of the contract underlying it, are fully supported by the plain meaning of the language used in the contract with respect to settlement. The policy specifically provides that no written consent is required of a former insured prior to settlement, even if the claim or suit arose during the period of coverage under the policy. "Former insured,"

as used in the contract provision, clearly indicates a person previously, or formerly, insured by the company, but one who is, at a subsequent time, no longer currently insured by the company. It provides that the insurer, when an insured is no longer currently insured by the company, may make settlement and disposition of the case, without the consent of the insured. The argument made by plaintiff, in seeking an interpretation contrary to the plain meaning contained in the language of the policy, is not sound and does not suggest any reasonable alternative interpretation.

■■ ■ The clear intent of the language used is that an insurer is not required to secure consent, prior to the settlement of an action, from one who is no longer a current insured of the company, *i.e.*, who is someone referred to as a "former insured." Rogers was an insured of the insurer for the period of June 1, 1970, to June 1, 1971. Thereafter, his policy was not renewed, nor does it appear that any other contract with the insurer was entered into by Rogers. Thus, when the Quilico action was settled in September of 1974, Rogers was a "former insured" of the insurer, under the terms of the policy. By the terms of the policy, his consent to such settlement was not required.

The second issue raises the contention by plaintiff that an insurance company could effectively do away with its contractual obligation to obtain written consent merely by cancelling or refusing to renew, and that this would be contrary to public policy. There is no foundation whatsoever in the record to support an implication that the policy was not renewed in an attempt to get around the consent provision. As a matter of fact, the record shows that the Quilico suit was not even filed until almost nine months after the expiration and nonrenewal of the policy covering Dr. Rogers. Plaintiff freely entered into a contract of insurance which clearly permitted the insurer, under certain circumstances, to settle claims and suits without his consent.

■■ The next error assigned by plaintiff concerns the allowance of summary judgment before discovery. Supreme Court Rule 191(b) (Ill. Rev. Stat. 1977, ch. 110A, par. 191(b)) specifies the procedure to be followed where additional discovery is needed in regard to summary judgment proceedings. The Rule provides that a party seeking additional facts in a summary judgment proceeding may submit an affidavit naming persons from whom he can obtain affidavits concerning the additional facts, showing why the affidavits cannot be obtained, and stating what the party believes the persons would testify as to such matters. When that is done, the court may, among other things, grant a continuance to allow the party to obtain the affidavits, including documents, from affiants. Plaintiff did not comply with this Rule and having failed to do so, he cannot now complain of an inability to conduct discovery before summary judgment was ordered.

Plaintiff argues next that defendant's conduct breached a duty to plaintiff independent of any duty associated with the insurance policy. Whether such a duty is owed to plaintiff by defendant and if so, whether that duty has been breached, depends on the relationship between plaintiff, defendant, and the insurance company. Since defendant is a group of attorneys, inquiry into this tripartite relationship focuses initially on the question, "Whom does the defendant represent?"

In *Allstate Insurance Co. v. Keller* (1958), 17 Ill. App. 2d 44, 149 N.E.2d 42, the court indicated that when an insurance company retains an attorney to defend an action against one of its insureds, the insured is the client and the company the attorney's employer. Of more recent vintage is *Maryland Casualty Co. v. Pepper* (1976), 64 Ill. 2d 187, 355 N.E.2d 24. Examination of that opinion indicates that an attorney represents both the insured as well as the insurance company in furthering the interests of each. The position that a lawyer represents both the insurer and the insured finds further support in ethical opinion No. 1822 of the American Bar Association. (See Annot., ICLE Code of Professional Responsibility 5—41.) (See also *Lysick v. Walcom* (1968), 258 Cal. App. 2d 136, 65 Cal. Rptr. 406; *Henke v. Iowa Home Mutual Casualty Co.* (1958), 249 Iowa 614, 87 N.W.2d 920. See generally Mallen, *Insurance Counsel: The Fine Line Between Professional Responsibility and Malpractice*, 45 Ins. Counsel J. 244 (1978).) The attorney-client relationship between the insured and the attorney imposes upon the attorney the same professional obligations that would exist had the attorney been personally retained by the insured. (*Allstate Insurance Co. v. Keller* (1958), 17 Ill. App. 2d 44, 149 N.E.2d 42; *American Mutual Liability Insurance Co. v. Superior Court* (1974), 38 Ill. App. 3d 579, 113 Cal. Rptr. 561; *Ivy v. Pacific Automobile Insurance Co.* (1958), 156 Cal. App. 2d 652, 320 P.2d 140.) "He owes to the policyholder the same 'undeviating and single allegiance' that he would owe to the insured if retained and paid by him." (*Newcomb v. Meiss* (1962), 263 Minn. 315, 322, 116 N.W.2d 593, 598.) The fact that the attorney also represents the insurer in no way alters his obligations or responsibilities to the insured. *Parsons v. Continental National American Group* (1976), 113 Ariz. 223, 550 P.2d 94; *Imperiali v. Pica* (1959), 338 Mass. 494, 156 N.E.2d 44.

Some of the duties of an attorney to the insured originate with the basic principle embodied in Canon 5 of the Code of Professional Responsibility of the American Bar Association (Am. Jur. 2d Desk Book, Doc. No. 91.1, at 140 (1978 Supp.)) which provides:

"A LAWYER SHOULD EXERCISE INDEPENDENT PROFESSIONAL JUDGMENT ON BEHALF OF A CLIENT."

While it has been held in a disciplinary proceeding that the Code of

Professional Responsibility is not binding on the court, the same decision recognizes that the Canons of Ethics contained in the Code constitute a safe guide for professional conduct and an attorney may be disciplined for not observing them. (*In re Taylor* (1977), 66 Ill. 2d 567, 363 N.E.2d 845.) It is true that the present action is one for malpractice and not a disciplinary proceeding, but it would be anomalous indeed to hold that professional standards of ethics are not relevant considerations in a tort action, but are in a disciplinary proceeding. Both malpractice actions and disciplinary proceedings involve conduct failing to adhere to certain minimum standards and we reject any suggestion that ethical standards are not relevant considerations in each.

Ordinarily, since the interests of insurer and insured are harmonious, there is no conflict and the attorney is able to exercise independent judgment for both clients. Therefore, in the usual instance, there is nothing improper or unethical about representing the interests of both. (See Keeton, *Ancillary Rights of the Insured Against His Liability Insurer*, 28 Ins. Counsel J. 395, 413 (1961).) However, situations can arise where those interests may become conflicting. (See generally *Guiding Principles of the National Conference of Lawyers and Liability Insurers*, Am. Jur. 2d Desk Book, Doc. No. 91.4, at 168 (1978 Supp.), approved by the American Bar Association, February 7, 1972.) As is recognized in EC 5-17 of the Code of Professional Responsibility of the American Bar Association (Am. Jur. 2d Desk Book, Doc. No. 91.1, at 144 (1978 Supp.):

> "Typically recurring situations involving potentially differing interests are those in which a lawyer is asked to represent * * * an insured and his in-insurer * * *. Whether a lawyer can fairly and adequately protect the interests of multiple clients in these and similar situations depends upon an analysis of each case. In certain circumstances, there may exist little chance of the judgment of the lawyer being adversely affected by the slight possibility that the interests will become actually differing; in other circumstances, the chance of adverse affect upon his judgment is not unlikely."

When a conflict does arise, serious ethical considerations prohibit an attorney from continuing to represent both the interests of the insured and the insurer. (See DR 5—107(c) of the Illinois Code of Professional Responsibility.) However, the attorney does not necessarily have to withdraw from the case. In many situations, if, after full and frank disclosure, the clients are willing to consent to the attorney's continued representation on their behalf, ethical considerations are satisfied and the attorney may continue to represent the conflicting interests. *Maryland Casualty Co. v. Pepper* (1976), 64 Ill. 2d 187, 355 N.E.2d 24.

What facts must be revealed depends on the circumstances. When an attorney represents two clients with divergent or conflicting interests in

the same subject matter, the attorney must disclose all facts and circumstances which in the judgment of a lawyer of ordinary skill and capacity, are necessary to enable his client to make a free and intelligent decision regarding the representation. *Lysick v. Walcom* (1968), 258 Cal. App. 2d 136, 65 Cal. Rptr. 406.

■■ While the foregoing discussion has focused on the risks of conflict inherent in dual representation, the principle to be gleaned is that the attorney does represent the insured and assumes all of the duties imposed by the attorney-client relationship. Not only does the attorney owe his client fidelity and loyalty, but also is required to exercise reasonable skill in the performance of his duties.

■■ Any attorney-client relationship includes the duty for the attorney to advise the client of progress in a case or controversy, and this duty is not altered by the presence of a third-party insurer whom the lawyer also represents. An insured must be informed of any settlement offers that affect him so that the insured may take proper steps to protect his own interests. *Ivy v. Pacific Automobile Insurance Co.* (1958), 156 Cal. App. 2d 652, 320 P.2d 140. See Mallen, *Insurance Counsel: The Fine Line Between Professional Responsibility and Malpractice*, 45 Ins. Counsel J. 244, 260, §17 (1978).

Well in advance of the settlement, defendant was informed by its client, the plaintiff, that no settlement should be made. According to plaintiff, defendant responded that the action would be defended. Despite the plaintiff's demands that the case not be settled, settlement negotiations took place culminating in settlement in September of 1974. Plaintiff was not informed prior to settlement of the intention of the defendant attorneys to settle the action. It is undisputed from the affidavits that the attorneys did not notify the doctor of the settlement.

■■ Apart from any considerations arising from the insurance policy, we believe that when defendant became aware that a settlement was eminent because of the preferences of the insurance company, and that their other client, the plaintiff, did not want the case settled, a conflict arose and defendant could not continue to represent both without a full and frank disclosure of the circumstances to its clients. Furthermore, the general duties of the defendant in representing plaintiff were strengthened by the defendant agreeing, if it did, to defend the case rather than settle. Having continued representing both the insurer and insured without the requisite disclosure, defendant breached its duty to plaintiff. When an attorney attempts dual relationships without making full and frank disclosure required of him, he is liable to the client who suffers loss caused by the lack of disclosure. *Lysick v. Walcom* (1968), 258 Cal. App. 2d 136, 65 Cal. Rptr. 406.

By failing to inform plaintiff of the proposed settlement, defendant foreclosed plaintiff from alternatives that were available to him. Plaintiff could have consented to continued representation by the defendant at the expense of the insurance company with the accompanying likelihood that the case would be settled without his consent, for, as we have held, the insurance company by virtue of the contract could settle without plaintiff's consent. If plaintiff believed such a course of action was not in his best interests, he could release the insurance company from its obligation under the policy, select different counsel, defend the action at his own expense and bear the risk of an adverse decision.

Having failed to provide plaintiff with the proper disclosure of the facts and then obtaining plaintiff's consent to continued representation, defendant breached a duty which, if damages and proximate cause are established, will make defendant liable to plaintiff for the loss caused by the lack of disclosure. We believe the trial court erred in holding for defendant on its motion for summary judgment.

Our dissenting colleague has recited part of a letter the plaintiff sent to defendant, apparently to suggest that plaintiff withdrew his earlier position and consented to the settlement. Without setting forth the content of that letter, suffice it to state that we do not believe the letter carries with it such a connotation, for the letter certainly does not expressly authorize or direct a settlement.

Our colleague in dissenting from this opinion recognizes the propriety of the issues regarding the duty of the attorneys to the plaintiff and the violation of that duty. However, he suggests the trial court properly dismissed the complaint because the damages disclosed by the record are speculative. The nature of the damages were never challenged by the defendant as being speculative. No answer was filed by the defendant denying the allegations of fact in the complaint. Defendant's response to the complaint took the form of a motion for summary judgment with the supporting affidavits referring to and relying on the insurance policy and its language as the sole bar to the plaintiff's cause of action. Defendant's affidavits and plaintiff's response thereto, as well as the opinion of the trial court, are directed only to the question of whether the former insured clause negated the obligation of the insurer and the attorney to secure the consent of the insured. Nowhere in the motion for summary judgment or in its supporting affidavits does the defendant offer any refutation that damages resulted from its conduct, relying solely on the provisions of the policy as its defense. Even on appeal, defendant has not specifically contested any issue relating to damages. In fact, defendant in its brief states:

"The question of whether Dr. Rogers was in fact damaged as a

result of the settlement is not relevant to a determination of whether the defendant is liable to Dr. Rogers for settling the underlying lawsuit."

Defendant's lack of concern for issues relating to damages is perhaps understandable in light of certain allegations in the complaint relating to damages. Apart from any question as to the propriety of this court to consider issues neither raised nor argued in the trial court or on appeal, the complaint does in fact set forth several allegations of damages which are sufficiently specific to withstand the challenge of a motion for summary judgment. In addition to the allegation that plaintiff has been deprived of an opportunity to pursue successfully a malicious prosecution action against Quilico and his attorneys, Dr. Rogers also alleges that as a result of the settlement he has sustained loss of both direct and referred surgical patients, suffered a substantial increase in professional liability insurance premiums and incurred legal fees and related costs. We believe these allegations are more than sufficient to allege specific and actual damages that were proximately caused by the defendant's conduct. However, since questions of proximate cause and damages are ordinarily questions of fact which a jury must ultimately resolve, the case must be remanded for further proceedings.

■■ Notwithstanding the defendant's assertion that it had no duty toward the plaintiff because of the policy provision eliminating the requirement of consent, we are unable to agree that such provision offers any justification for abrogating duties defendant owed plaintiff as the plaintiff's attorney. "The standards of the legal profession require undeviating fidelity of the lawyer to his client. No exceptions can be tolerated." (*VanDyke v. White* (1960), 55 Wash. 2d 601, 613, 349 P.2d 430, 437.) While the insurance policy and its provision may appropriately regulate the rights between the insurer and insured, these provisions ought not and do not negate the duties an attorney owes his client.

Accordingly, the judgment of the circuit court of Will County is reversed and the cause remanded for further proceedings consistent with the views expressed herein.

Reversed and remanded.

BARRY, P. J., concurs.

Mr. JUSTICE ALLOY, dissenting:

I cannot agree with my colleagues as to the disposition of the instant case. I believe the motion for summary judgment was properly allowed for the reason that the plaintiff did not properly state a cause of action alleging that he sustained damages proximately caused by reason of the

failure of the defendant-attorneys to advise him of the proposed settlement which was to be made of the *Quilico* case. The record in the instant case, I believe, clearly calls for an affirmance.

I am in agreement with the disposition of all other issues in the case, as noted in the majority opinion, and agree that there was an unquestioned right on the part of the insurer (specifically provided in the insurance policy) to dispose of this case without the agreement or consent of the plaintiff Rogers. It should be noted that disposition of the *Quilico* action was made at a time when the insurer had the unquestioned right to settle this cause, without the consent of Rogers, and the insurer did so by taking a covenant not to sue and with a specific denial of liability as to Dr. Rogers. The contract of insurance, under the circumstances, and at the time of the disposition, expressly left the decision as to settlement to the insurer, as noted in the majority opinion.

I agree that when an insurance company retains an attorney to defend an action against an insured individual, that insured is the client and the insurance company is the attorney's employer. The attorney has the same professional obligations which would exist had the attorney been personally hired by the insured. The fact that the attorney also represents the insurance company does not alter the obligations or responsibilities referred to. I also believe that the standards of the canons of ethics, applying to attorneys, would indicate that the preferred procedure is that the defendant-attorneys withdraw as counsel for plaintiff or as counsel for the insurance company, if a disagreement arose when the insurance company indicated its desire to settle the case. I also agree that, normally, an insured should be informed by the attorney of any settlement offers which may affect the client, so that the insured may take proper steps to protect his own interests.

I also recognize that obligations referred to in the canons of ethics are not binding obligations so as to deprive an attorney-defendant of the right to object to the failure of a plaintiff to state a cause of action on his complaint. The fact that the canons are not binding obligations in litigation for damages was noted by the Illinois Supreme Court in *In re Taylor* (1977), 66 Ill. 2d 567, 571. The canons of ethics, thus, are designed for consideration and concern in disciplinary proceedings, and not as a declared basis for maintenance of a tort action for damages such as we have in the instant case. We must consider whether or not the complaint and the support, when considered on a motion for summary judgment, justifies the maintenance of the action by the plaintiff.

The factual situation, as shown by the pleadings and support thereof at the time of the consideration of the motion for summary judgment, considered carefully, does not justify a reversal as specified in the majority opinion. The record in the instant case indicates that defendant

Rogers was resistive to settlement. We must note, however, that the exhibit attached to the doctor's affidavit filed by him in the trial court for consideration by the court in conjunction with the motion for summary judgment, must be considered carefully. The exhibit attached to the doctor's affidavit is a copy of a letter from the doctor to the attorney, dated December 8, 1972, in which the doctor expresses his impatience and annoyance at having to spend time dealing with the *Quilico* case. In the letter, the doctor tells the attorneys, at length, why the *Quilico* case has no merit and cannot prevail. The doctor then states: "I refuse to participate any further with Mr. Quilico's absurd accusations * * *. I trust you can dispose of this problem quickly and with little diffculty." There are no further indications, in the meager record, as to what further, if anything, developed between the attorney and the doctor. Settlement was made in September of 1974, long after the December 8, 1972, letter. Settlement was made for a nominal sum and there was an express denial of liability as to the doctor. It can readily be observed that disposition of the lawsuit "with little difficulty," was certainly accomplished by the settlement.

The instant case involves an action for damages as against the defendant and is based upon the only specific allegations raising any issue of damages, *i.e.*, specifically, that if the *Quilico* lawsuit had been tried and the decision was in favor of the doctor, the doctor speculates that he might have filed a malicious prosecution action against Quilico and recovered from Quilico. As we must note, the allegations raised only clearly speculative issues with respect to damages. It is unquestioned that the *Quilico* case could have been settled without the doctor's consent and even over his objection or that of his attorneys, insofar as liability of the insurance company is concerned. Dr. Rogers was not deprived of any rights or benefits under the insurance contract. The doctor's contention, that he would have been successful in defense of the action instituted by Quilico, is speculative, and not certain, and the doctor also now speculates, on appeal, as a basis for the action instituted as against defendant-attorneys, that, if the doctor had prevailed in the action by Quilico, the doctor could then file an action as against Quilico for malicious prosecution, in which the doctor, also, now speculates, that he would have been successful. There is no support for these conclusions in the record.

So far as the record discloses, no proximate or specific damages are alleged to have resulted from the action of the defendant-attorneys in failing to advise plaintiff, before the settlement of the *Quilico* case, which could support the cause of action sought to be asserted by plaintiff.

We have a record in the instant case in which an action for malpractice as against the doctor was disposed of, as authorized in the insurance policy. In the settlement, the doctor was specifically recited to

be without liability and the disposition was made for a very nominal sum. We also have a letter in which Dr. Rogers tells the attorneys that he is not desirous of spending any more time or energy on the *Quilico* case and wanted it disposed of without further "difficulty." To theorize, at the time of the presentation of the motion for summary judgment, that the doctor would have undertaken the defense in the *Quilico* case for the purpose of obtaining a verdict or judgment in his favor and for the further asserted purpose of filing a malicious prosecution action as against Quilico, is entirely speculative, and fails to show any proximate damage resulting from the disposition which actually was made.

On the basis of the record, therefore, while I believe that the better procedure would have been for defendant to have advised the doctor of the impending settlement arrangements, there is no specific allegation, in the complaint or its support, of any damage proximately resulting from the failure to advise the doctor of such proposed settlement. Consequently, on the basis of the record, I believe that the trial court properly granted the motion for summary judgment in the instant case.

To reverse the summary judgment granted in the instant case, I believe, would set a very unsound precedent. To argue that such speculative elements of damages, as asserted in the instant case, can sustain the complaint and authorize further procedures on the basis of such unfounded speculation, is inconsistent with the standards of practice which are designed to protect defendants from lawsuits which are not properly founded in fact and in law. Dr. Rogers was not put through the burden of an actual malpractice trial by reason of the disposition which was authorized under the insurance contract. The conclusion of the attorneys for Dr. Rogers that this was in his best interest should not be lightly overridden and subject such attorneys to a malpractice action against them based upon no sound allegation of damage. To do so would invite speculative action on the part of any individual who has expressed a desire that his particular action not be disposed of, even though in the best interests of the client.

The majority opinion suggests that the issue of damages to Dr. Rogers was not contested by defendant at the trial level or before this court. In his brief on appeal, however, Dr. Rogers concedes that the issue of damages was raised by defendant's motion for summary judgment. His brief states that the "gist of the allegations of defendant's motion for summary judgment is as follows" (and there follows a listing including the statement "Rogers was not damaged by the settlement and dismissal"). Thus, it is apparent, from the brief of Dr. Rogers, that he concedes that the issue of damages was raised by defendant and presented before the court on the summary judgment motion.

The issues raised by Dr. Rogers on appeal in this court clearly do not

support a reversal. The issues so raised are actually properly determined against Dr. Rogers on all points raised by him on appeal, by the majority opinion, in finding that the insurer had the right to settle the case without Dr. Rogers' approval. The latter portion of the majority opinion is premised, not on the issues raised on appeal, but rather on an effort to search the record to support Dr. Rogers' claim against defendant. This is contrary to the established rule that a court of review will only search the record for the purpose of affirmance and not for the purpose of reversal. We should not search the record for the purpose of reversal. Dr. Rogers presented nothing by affidavit in the hearing on the motion for summary judgment to show damage proximately resulting from defendant's omission to advise Dr. Rogers prior to the settlement by the insurer. He had the obligation to show any such damage. He failed to do so. In absence of any affidavit showing such damage in opposition to the summary judgment motion, the trial court properly granted the summary judgment motion.

This is not a case where an attorney has subjected a client to monetary damages by reason of negligent or incompetent action by the attorney.

This is a case where Dr. Rogers, as an insured, got precisely the insurance coverage and protection provided in his policy, which included the right by the insurer to settle the case, which was done without any cost to Dr. Rogers.

This is not a case where the court of review (as undertaken by the majority opinion in seeking to find some damage to Dr. Rogers) should strain to theorize that Dr. Rogers might have taken over the defense of the *Quilico* action and have been successful in such defense, and thereafter could file a malicious prosecution action against Quilico in which he would thereafter be successful (all without any support in the record in this case and wholly speculative).

This is a case where Dr. Rogers has suffered no damage by the failure of defendant, as counsel, to advise him of the pending settlement of the *Quilico* case.

This is a case where the only damages potentially claimed by Dr. Rogers are entirely speculative.

Under such circumstances, and on the basis of the record in this case, it is apparent that the trial court acted properly in granting summary judgment in this case and that such order should be affirmed.