964 So.2d 1015 (2007)
Michael A. TEAGUE, M.D.
v.
ST. PAUL FIRE AND MARINE INSURANCE COMPANY, St. Paul Insurance Company, Seale, Smith, Zuber and Barnette, Donald Zuber, Catherine Nobile, Catherine Lauffer, and ABC Insurance Agency.
No. 2006 CA 1266.
Court of Appeal of Louisiana, First Circuit.
June 8, 2007.
Writ Granted October 5, 2007.
John L. Hammons, Shreveport, Counsel for Plaintiff/Appellee Michael A. Teague, M.D.
*1016 Stephen R. Wilson, Baton Rouge, Counsel for Defendants/Appellants Seale, Smith, Zuber and Barnette, Donald Zuber, and Catherine Nobile.
Before: KUHN, GAIDRY, and WELCH, JJ.
GAIDRY, J.
A physician, sued for medical malpractice, in turn sued his defense attorneys for legal malpractice in effecting the settlement of the malpractice case against him without his consent. The defense attorneys appeal a judgment against them, and also except to the physician's cause of action on the grounds of peremption. For the following reasons, we sustain the exception, reverse the judgment, and dismiss the action.

FACTS AND PROCEDURAL HISTORY

The Medical Malpractice Action
The appellee, Michael A. Teague, M.D., was sued in 1997 by a former patient for medical malpractice after a medical review panel had unanimously concluded that no breach of professional standards occurred in the course of treatment. Dr. Teague's malpractice insurer, St. Paul Insurance Company (St. Paul), assigned the defense of the suit to the law firm of Seale, Smith, Zuber & Barnette, L.L.P., one of the appellants. Donald Zuber, one of the firm's partners and another appellant, answered the suit on behalf of Dr. Teague, denying liability and requesting trial by jury. Mr. Zuber subsequently delegated the handling of the litigation to an associate, Catherine Nobile, also an appellant.
On April 19, 1999, the trial court issued a case management schedule order, setting a three-day jury trial beginning on January 25, 2000. The order also fixed a deadline of August 1, 1999 for the filing of a jury bond by the defendants. It is undisputed that Ms. Nobile failed to file the required jury bond by the deadline established in the order, thus resulting in the loss of the right to a jury as the trier of fact.
The St. Paul policy did not contain a "consent to settle" clause, which would have required the insurer to obtain Dr. Teague's consent to any proposed compromise of a malpractice claim covered by the policy. Instead, the policy described St. Paul's duties and rights in that regard as follows:
We'll defend any suit brought against you for damages covered under this agreement. We'll do this even if the suit is groundless or fraudulent. We have the right to investigate, negotiate and settle any suit or claim if we think that's appropriate.
On Friday, October 29, 1999, the parties' attorneys participated in the mediation of the case. It is undisputed that Dr. Teague was never previously informed that the mediation would take place. As the result of the mediation, a settlement agreement was reached that day, whereby St. Paul agreed to pay the plaintiff $50,000.00 to compromise her claim against Dr. Teague. That afternoon, Ms. Nobile telephoned Dr. Teague's office and left a message for him, advising that the case had been settled. Dr. Teague returned Ms. Nobile's call that same afternoon and confirmed that the case had been settled as the result of the mediation.
On Monday, November 1, 1999, Dr. Teague telephoned Mr. Zuber, discussed the settlement, and expressed his dissatisfaction with the fact that the case was settled rather than tried.
The formal settlement release was executed by the plaintiff on November 5, 1999, *1017 and her lawsuit was subsequently dismissed.

The Legal Malpractice Action
Dr. Teague instituted the present litigation against Mr. Zuber, Ms. Nobile, and Seale, Smith, Zuber & Barnette, L.L.P. (the defendants) on November 3, 2000.[1] In his petition, Dr. Teague alleged that an attorney-client relationship existed between him and the defendants in the prior medical malpractice action, that the defendants failed to properly investigate and defend that action, that they failed to keep him informed of significant developments affecting his interests, that they negligently forfeited his right to trial by jury, and that they engaged in a conspiracy to conceal their professional neglect by effecting the settlement of the medical malpractice claim. Dr. Teague further alleged that "[a]s a direct consequence of the settlement," St. Paul reported the settlement to the National Practitioner Data Bank.[2] Finally, he claimed that as the direct result of the defendants' negligence and breach of professional duties, he sustained damages consisting of "injury to business reputation, unwarranted expense associated with obtaining malpractice insurance at a higher premium, loss of income, past and future, embarrassment, humiliation, and mental anguish." While admitting certain facts alleged in the petition, such as the failure to post the jury bond, the defendants denied any liability.
Dr. Teague subsequently amended his petition to allege that the defendants violated Rule 1.4 of the Louisiana State Bar Association Rules of Professional Conduct "by failing to keep [him] advised of all pertinent developments in his case and by intentionally concealing from him the fact that they had waived his constitutional right to trial by jury through their negligence in failing to post the required jury bond in a timely manner."
Dr. Teague and the defendants filed cross-motions for summary judgment on the issue of liability. The motions were heard on the same day, and the trial court denied both motions by judgment signed on April 9, 2003.
The case was subsequently tried before a jury on October 17-19, 2005. The jury found the defendants liable to Dr. Teague, assessing 70% fault to Ms. Nobile and 30% fault to Mr. Zuber, and awarded him $138,500.00 in damages.[3] The trial court's judgment incorporating the jury's verdict was signed on November 29, 2005. On December 6, 2005, the defendants filed a posttrial peremptory exception of peremption *1018 and prescription, arguing that based upon the evidence at trial, including Dr. Teague's own testimony, his cause of action was perempted prior to the date he filed suit. The defendants also filed a motion for judgment notwithstanding the verdict on various alternative grounds. The exception and motion were both denied in separate judgments signed on March 10, 2006.
The defendants thereafter instituted this suspensive appeal, and on August 21, 2006 they filed a peremptory exception of peremption in this court, reasserting that defense.

ASSIGNMENTS OF ERROR AND ISSUES PRESENTED
Although our ultimate resolution of this matter obviates review and analysis of all of the issues raised, we set out all of the defendants' assignments of error for the sake of completeness:
1. The trial court erred in allowing judgment to be rendered on evidence which is insufficient as a matter of law.
2. The [trial court] erred in failing to grant JNOV, thus allowing the judgment based on legally insufficient evidence to stand.
3. The trial court erred in finding that the claims of plaintiff were not perempted pursuant to Louisiana Revised [Statutes] 9:5605.
4. The trial court below erred in finding plaintiff's evidence sufficient to support an award of general damages, even if such damages are legally recoverable.
5. If any award of damages is legally sustainable, the jury award of $138,500.00 is grossly excessive.
6. The trial court erred in refusing to place St. Paul Insurance Company on the verdict form [for purposes of assessing liability].
7. The trial court erred in failing to charge the jury:
a) that under Louisiana law, a party in a civil matter is not entitled to a jury trial if it is stipulated that damages do not exceed $50,000.00;
b) that settlements are favored in Louisiana law;
c) that without a consent to settle clause, St. Paul Insurance Company had absolute authority to settle the [medical malpractice] case.
8. The trial court erred in finding liability as against Donald Zuber.
The defendants frame the issues raised in this action as follows:
1. Can an insured under a professional malpractice insurance policy with no "consent to settle" clause claim and recover damages from his defense attorneys if the suit against him is settled without his knowledge or consent?
2. Can a plaintiff in a legal malpractice case who sues for special damages but does not prove them, nevertheless be awarded general damages?
3. Can a plaintiff in a legal malpractice suit who does not sustain economic damages recover general damages when the general damages are not severe, debilitating, and foreseeable such as would be required in an ancillary [sic] personal injury claim where no physical injury was sustained?
4. Is specific knowledge of settlement of his lawsuit without consent, which settlement forms the basis for later claims of malpractice, sufficient to excite inquiry, place such party on notice, and begin the running of peremption pursuant to [La. R.S.] 9:5605?

*1019 5. Can an attorney be held liable in legal malpractice if he is no longer involved in the case and has no input into or knowledge of a settlement (which forms the basis of plaintiff's complaint) merely because such attorney had not filed a motion to withdraw as counsel or specifically notified the client of the transfer of the case to another attorney within the same firm?

DISCUSSION
This case is illustrative of the pitfalls inherent in the "eternal triangle" created by the tripartite relationship of insurer, insured, and insurance defense counsel. Despite the absence of a "consent to settle" clause in his favor in the St. Paul policy, Dr. Teague contends that the professional responsibilities and ethical duties imposed upon the defendants by virtue of their representation of him support the existence of an independent cause of action against them and the trial court's judgment. This important substantive issue raised by Dr. Teague's action has been addressed by the courts of other jurisdictions, with conflicting results.[4] The issue appears to be res nova in this state. While we acknowledge the importance of the substantive legal and ethical issues presented, it is unnecessary and inappropriate for us to reach those issues, for the simple reason that this matter must be resolved on the procedural basis of peremption.
Peremption of legal malpractice claims is governed by La. R.S. 9:5605, which provides, in pertinent part:
A. No action for damages against any attorney at law duly admitted to practice in this state, any partnership of such attorneys at law, or any professional corporation, company, organization, association, enterprise, or other commercial business or professional combination authorized by the laws of this state to engage in the practice of law, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide legal services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered; however, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.
B. The provisions of this Section are remedial and apply to all causes of action without regard to the date when the alleged act, omission, or neglect occurred. . . . The one-year and three-year periods of limitation provided in Subsection A of this Section are peremptive periods within the meaning of Civil Code Article 3458 and, in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended.

C. Notwithstanding any other law to the contrary, in all actions brought in this state against any attorney at law duly admitted to practice in this state, any partnership of such attorneys at law, or any professional law corporation, company, organization, association, enterprise, or other commercial business *1020 or professional combination authorized by the laws of this state to engage in the practice of law, the prescriptive and peremptive period shall be governed exclusively by this Section.
. . .
E. The peremptive period provided in Subsection A of this Section shall not apply in cases of fraud, as defined in Civil Code Article 1953.
In a legal malpractice case, prescription (or peremption) commences to run when a claimant knew or should have known of the existence of facts that would have enabled him to state a cause of action for legal malpractice. Paternostro v. LaRocca, 01-0333, p. 5 (La.App. 1st Cir.3/28/02), 813 So.2d 630, 634. A prescriptive period will begin to run even if the injured party does not have actual knowledge of facts that would entitle him to bring a suit as long as there is constructive knowledge of same. Campo v. Correa, 01-2707, p. 12 (La.6/21/02), 828 So.2d 502, 510. (Emphasis supplied.) The latter principle applies to the peremption of legal malpractice claims. See Atlas Iron and Metal Co. v. Ashy, 05-458, p. 5 (La.App. 3rd Cir.1/4/06), 918 So.2d 1205, 1210, writ not considered, 06-0296 (La.4/28/06), 927 So.2d 276.
The standard for determining whether a claimant has constructive knowledge of facts sufficient to commence the running of peremption is that of a reasonable person. Carroll v. Wolfe, 98-1910, p. 6 (La.App. 1st Cir.9/24/99), 754 So.2d 1038, 1041. Thus, a plaintiff who had knowledge of facts that would place a reasonable person on notice that malpractice may have been committed shall be held to have been subject to the commencement of prescription by virtue of such knowledge even though he asserts a limited ability to comprehend and evaluate the facts. Id. The focus is on the appropriateness of the claimant's actions or inactions. Id.
In Paternostro, the plaintiff sued his former attorney for legal malpractice, claiming, among other things, that the attorney presented a substandard evidentiary case to a medical review panel and failed to request a jury trial in the subsequent lawsuit. The evidence included correspondence from the plaintiff to the Patients' Compensation Fund and the United States Attorney's office, asserting various complaints against his attorney related to the handling of the medical review panel procedure. The correspondence was dated over a year prior to the date the legal malpractice suit was filed. We affirmed the trial court's dismissal of the case as perempted. Paternostro, 01-0333 at pp. 5-6, 813 So.2d at 635.
In the Atlas Iron case, the plaintiff sued its former attorney for his failure to properly investigate its insurance coverage and to join its liability insurers as co-defendants in a suit against it, thereby depriving it of the benefit of coverage. The evidence showed that the plaintiffs president had experience with prior claims against his company covered by insurance, and that he testified that he felt the defendant attorney did nothing to prepare for trial and nothing or very little at trial. The witness also admitted that he discovered on the first day of trial that the company's insurers were not involved. The trial resulted in a judgment against the plaintiff the following day. The Third Circuit Court of Appeal held that the "peremption clock" began running on the day of judgment, and that the legal malpractice suit, filed over two years later, was perempted. Atlas Iron, 05-458 at pp. 10-11, 918 So.2d at 1213.
In Paragraph 35 of his petition, Dr. Teague alleged:

*1021 The first notice plaintiff Teague received that settlement was being considered was when his office manager received a phone message from defendant Nobile notifying him that the case had been concluded by way of payment to the plaintiffs. Upon being so informed, plaintiff Teague called defendants Zuber and Nobile and expressed his dismay and dissatisfaction that the case had been settled without his knowledge or consent and vociferously objected to the fact that payment had been made to settle this specious case. (Emphasis supplied.)
The evidence indisputably places the date of receipt of Dr. Teague's "first notice" of the settlement, the telephone message, on October 29, 1999. That same date, Dr. Teague spoke on the telephone with Ms. Nobile and confirmed the content of the message. It is also undisputed that Dr. Teague was informed at that time that the trial would not have taken place before a jury.
In his trial testimony, Dr. Teague recounted his "shock" at first learning of the settlement and his surprise at learning from Ms. Nobile, who had never met with him concerning the medical malpractice case, that she had been handling his defense. He also described himself as being "confused" after first receiving the telephone message concerning the settlement. Dr. Teague testified that when he spoke with Mr. Zuber the following Monday, November 1, 1999, Mr. Zuber, whom he assumed had been handling the case, advised him that he had not been involved in the mediation. Although Dr. Teague had previously been involved in other cases involving Mr. Zuber, he emphasized that he had not been placed in such a position before in 25 years of medical practice and had never had a case brought against him settled nor an adverse judgment. He explained, "I had never had a case at that point even go to trial much less be settled, so I certainly wanted to protect my reputation and my integrity, and so that was very important to me to make sure that my record was still clear." He admitted under cross-examination, however, that by the time he spoke with Mr. Zuber, he was already aware that the settlement would be reported to the National Practitioner Data Bank, and that he was already "very upset" and "concerned" about the effect of the "settlement" upon his professional reputation.
Upon receiving notice that the supposedly "specious" suit against him had been settled at mediation, Dr. Teague certainly had notice "enough to excite attention and put [him] on guard and call for inquiry." See Campo, 01-2707 at p. 12, 828 So.2d at 510-11. And such notice was "tantamount to knowledge or notice of everything to which a reasonable inquiry may lead," including any predicate events or prior acts which supposedly prompted the settlement. See Campo, 01-2707 at p. 12, 828 So.2d at 511. Thus, the fact that Dr. Teague was unaware at the time he was informed of the settlement of the defendants' earlier failure to file the jury bond does not serve to stop the "peremption clock," or to reset it upon his acquiring that information.
Based upon the foregoing, the conclusion is inescapable that the peremptive period of Dr. Teague's cause of action, meritorious or not, commenced on October 29, 1999. This action, indisputably filed over a year after that date, is perempted. We accordingly sustain the peremptory exception of peremption of the defendants-appellants, reverse the trial court's judgment in favor of the plaintiff-appellee, Michael A. Teague, M.D., and against the defendants-appellants, and dismiss Dr. Teague's cause of action with prejudice *1022 and at his costs. All costs of this appeal are assessed to the plaintiff-appellee.
EXCEPTION SUSTAINED; REVERSED AND RENDERED.
NOTES
[1] St. Paul and its claims adjuster, Catherine Laufer, were also named as defendants, but were subsequently dismissed from the suit.
[2] See 45 C.F.R. §§ 60.1-60.14. The National Practitioner Data Bank for Adverse Information on Physicians and Other Health Care Practitioners was established by the U.S. Department of Health and Human Services under the authority of the Health Care Quality Improvement Act of 1986, 42 U.S.C. §§ 11101, et seq. The purpose of the National Practitioner Data Bank is "to collect and release certain information relating to the professional competence and conduct of physicians, dentists and other health care practitioners." 45 C.F.R. § 60.1. Any insurance company which makes a payment under a policy "for the benefit of a physician, dentist or other health care practitioner in settlement of or in satisfaction in whole or in part of a claim or a judgment" for malpractice must report certain information regarding the claim and payment to the National Practitioner Data Bank. 45 C.F.R. § 60.7. However, any settlement payment "shall not be construed as creating a presumption that medical malpractice has occurred." 45 C.F.R. § 60.7(d).
[3] The jury verdict form did not provide for categorization of the damages, but provided only one blank to be completed with the monetary amount of all damages.
[4] Cf. Rogers v. Robson, Masters, Ryan, Brumund & Belom, 74 Ill.App.3d 467, 30 Ill.Dec. 320, 392 N.E.2d 1365 (1979), affirmed, 81 Ill.2d 201, 40 Ill.Dec. 816, 407 N.E.2d 47 (1980), and Mitchum v. Hudgens, 533 So.2d 194 (Ala.1988). See also Lieberman v. Employers Insurance of Wausau, 84 N.J. 325, 419 A.2d 417 (1980).