754 So.2d 1038 (1999)
Robert L. CARROLL and Carroll Maxwell as Shareholders of AFAD, Inc.
v.
William M. WOLFE.
No. 98 CA 1910.
Court of Appeal of Louisiana, First Circuit.
September 24, 1999.
*1039 Robert W. Hallack, Baton Rouge, for Plaintiffs-Appellants Robert L. Carroll and Carroll Maxwell.
Matthew F. Block, Thibodaux, for Plaintiffs-Appellants Timothy Deligans and Billy Deligans.
Thomas M. Richard, Mandeville, for Defendants-Appellees William M. Wolfe and The Home Insurance Company.
Before: FOIL, FOGG, and GUIDRY, JJ.
FOGG, J.
In this legal malpractice case, the plaintiffs appeal a judgment sustaining a peremptory exception raising the objection of prescription and dismissing their lawsuit with prejudice. For the following reasons, we affirm.
On September 9, 1993, Robert L. Carroll and Carroll Maxwell, as shareholders of the domestic corporation, AFAD, Inc., filed a petition for damages, naming as the defendant, William M. Wolfe. The petitioners subsequently amended the petition to include Timothy Deligans and Billy Deligans as petitioners and to change their posture to sue both individually and as shareholders of AFAD. They also added as a defendant The Home Insurance Company, Wolfe's professional liability insurer.
The petition alleged that, in August of 1988, AFAD and Louisiana Gulf Seafood, Inc. (LGS) retained the professional services of Wolfe for the purpose of starting an offshore processing plant. AFAD purchased a semi-submersible rig which was then sold to LGS for $510,000.00. Through its president, LGS signed a promissory note dated August 8, 1988 and further granted a Preferred Ship's Mortgage in favor of AFAD. However, the Preferred Ship's Mortgage was never filed with the U.S. Coast Guard, and thus, was never perfected.
The petition further asserted that the rig incurred dockage fees while in the Port of Mobile, Alabama. In 1989, the rig was seized and sold for the dockage fees of approximately $40,000.00. Petitioners are shareholders of AFAD who allegedly did not discover that the rig had been seized and sold until December of 1992.
Additionally, the petition states that had Wolfe filed the Preferred Ship's Mortgage with the U.S. Coast Guard it would have primed all other liens and the rig would not have been seized and sold to pay dockage fees.
The defendant answered the petition, generally denying the allegations. In his answer, Wolfe also brought exceptions of no right of action, no cause of action, and prescription.
*1040 On November 17-18, 1997 and December 15, 1997, the trial court heard the defendants' exceptions of prescription and no right of action. The trial court sustained the exception of prescription, overruled the exception of no right of action as moot, and dismissed the plaintiffs' lawsuit with prejudice.
The plaintiffs appealed that judgment, asserting the trial court erred in sustaining the exception of prescription. Wolfe and The Home Insurance Company answered the appeal, asserting the trial court correctly sustained the exception of prescription. Alternatively, they asserted their exception of no right of action should have been sustained.
The petition claims that Wolfe was negligent for a failure to take action in 1988. In 1989, the rig was seized and sold. On the face of the petition filed in these proceedings, it appears that the claim of legal malpractice against Wolfe has prescribed, thus shifting the burden to the petitioners to prove that the claim has not prescribed. Bissic v. Hart Associates, 26-099 (La.App. 2 Cir. 9/21/94), 643 So.2d 261.
In 1990, the legislature enacted LSA-R.S. 9:5605, which provided that a legal malpractice claim prescribed within one year from the date of the negligent act or one year from the date the alleged negligent act was discovered or should have been discovered. The statute further provided that "even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission or neglect." LSA-R.S. 9:5605 A.
In 1992, the statute was amended by Act 611 to provide the following:
The provisions of this Section are remedial and apply to all causes of action without regard to the date when the alleged act, omission, or neglect occurred. However, with respect to any alleged act, omission, or neglect occurring prior to September 7, 1990, actions must, in all events, be filed in a court of competent jurisdiction and proper venue on or before September 7, 1993, without regard to the date of discovery of the alleged act, omission, or neglect. The one year and three year periods of limitation provided in Subsection A of this section are peremptive periods within the meaning of Civil Code article 3458 and, in accordance with Civil Code article 3461, may not be renounced, interrupted, or suspended.
LSA-R.S. 9:5605 B. The 1992 amendment to LSA-R.S. 9:5605 made it retroactive to all acts or omissions in claims for legal malpractice. Graham v. Conque, 626 So.2d 870 (La.App. 3 Cir.1993), writ denied, 93-3169 (La.2/11/94), 634 So.2d 383. This suit was filed on September 3, 1993, just prior to the September 7, 1993 deadline for undiscovered claims set forth in LSA-R.S. 9:5606 B.
The appellants urge that their claim has not prescribed as it was filed before September 7, 1990. They contend that, after the effective date of the amendment, they had until September 7, 1993 to file their lawsuit regardless of when they became aware of the negligent act.
This court considered that argument in the case of Vaughn v. Slaughter, 94-0552 (La.App. 1 Cir. 3/3/95), 653 So.2d 36, writ denied, 95-0828 (La.5/5/95), 654 So.2d 339, and our holding in that case is adverse to the appellants' position. Therein, we held that the grace period provided for in Section B relates to the three year peremptive period in Section A. It was not intended to extend prescription beyond one year from the date plaintiff acquired knowledge of the act, omission, or neglect which gave rise to the malpractice claim. See Succession of Hellmers, 93-2386, 93-2387, 93-1883, and 93-2073 (La.App. 4 Cir. 5/26/94), 637 So.2d 1302. Under the language of Vaughn, although suit was filed more than five years after the defendant's alleged malpractice, the claim is not time-barred under the three year limitation period because the alleged negligence occurred prior *1041 to September 7, 1990 and the action was brought prior to September 7, 1993. However, the action will be time-barred by the one year limitation period if the appellants knew or should have known of the nonfiling of the mortgage more than one year prior to September 3, 1993.
The rig, and then the note, were AFAD's only assets. The shareholders of AFAD, including those not involved in this litigation, expected that LGS would attract investors and pay the note within three months of the sale or sell the rig for scrap. At trial, the appellants testified that, in either case, the shareholders expected to get a quick 90-day return on their investment.
By May 1988, which was three months after the sale of the rig to LGS, LGS had not paid the note, and the appellants testified that they understood that Robert Carroll, the president of LGS, was continuing to search for potential investors in LGS. It is undisputed that the rig was seized on August 18, 1989 and, subsequently, sold and scrapped.
The appellants contend they believed the process of searching for investors was ongoing until they learned of the seizure of the rig in July 1992. According to Billy Deligans' testimony, in July of 1992, he requested that Jack Segal, a scrapper from Houston, survey the rig for scrapping purposes. Billy Deligans testified that in July 1992 Jack Segal was in Mobile, and he saw the U.S. Marshall's notices posted on the rig. Segal advised Billy Deligans of this fact and Billy Deligans immediately notified Carroll Maxwell who advised Bob Carroll. Billy Deligans also advised Timothy Deligans.
They assert that even upon learning of the seizure they were assured by Charles Ortigo, the vice president of AFAD, that he had spoken with Robert Carroll and that the seizure was not a problem. The appellants contend that they first learned the rig had been sold in December of 1992 from an attorney they hired to review the matter; therefore, their suit filed in September 1993 is timely.
Prescription commences to run when a claimant knew or should have known of the existence of facts that would have enabled him to state a cause of action for legal malpractice. Olivier v. Poirier, 563 So.2d 1227 (La.App. 1 Cir.), writ denied, 568 So.2d 1054 (La.1990). The standard imposed in the case of Griffin v. Kinberger, 507 So.2d 821 (La.1987) is that of a reasonable man. That standard is designed to establish a rule that any plaintiff who had knowledge of facts that would place a reasonable man on notice that malpractice may have been committed shall be held to have been subject to the commencement of prescription by virtue of such knowledge even though he asserts a limited ability to comprehend and evaluate the facts. Taussig v. Leithead, 96-960 (La.App. 3 Cir. 2/19/97), 689 So.2d 680. The focus is on the appropriateness of the claimant's actions or inactions. Ledbetter v. Wheeler, 31-357 (La.App. 2 Cir. 12/9/98), 722 So.2d 382.
We find that knowledge of the seizure of the rig without prior notice, after the long history of delay in payment of the note by LGS, was sufficient to excite the attention of a reasonable man to trigger the running of prescription. This occurred in July 1992 at which time the appellants had one year in which to file suit. Therefore, the suit is untimely.
Because we find the trial court correctly sustained the exception of prescription, we need not consider issues concerning the exception of no right of action raised by the appellees in their answer to the appeal.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs are assessed to the plaintiffs, Robert L. Carroll, Carroll Maxwell, Timothy Deligans and Billy Deligans.
AFFIRMED.