762 So.2d 740 (2000)
In the Matter of the SUCCESSION OF Donald Maurice BARTHEL.
No. 99 CA 1573.
Court of Appeal of Louisiana, First Circuit.
June 23, 2000.
*741 Bryant W. Conway, Baker, for Plaintiff/Appellant, Irene Hyatt Barthel and Melody Ann Barthel.
Scott H. Fruge', Baton Rouge, for Defendant/Appellee, Estate of Donald M. Barthel (Mary Alice Percle Barthel).
Before: LeBLANC, PETTIGREW, and KLINE,[1] JJ.
KLINE, J. Pro Tempore.
This is an appeal from a judgment in a succession proceeding dismissing Melody Barthel's request to nullify a will and to be recognized as a forced heir of her father's estate. The judgment also dismissed a community property claim asserted by Melody's mother, Irene Hyatt Barthel.

FACTS
The facts in this case are not in dispute. Donald Maurice Barthel (the decedent), married Irene Hyatt Barthel (Irene) in 1956. Two children were born of this marriage, Donald M. Barthel, Jr., (Don) and Melody Ann Barthel (Melody). On November 5, 1971, Irene obtained a judgment of divorce against the decedent. On June 3, 1974, Irene and the decedent executed a written settlement of their community property.
The decedent subsequently married Mary Alice Percle Hatchell (Mary), but no children were born of this marriage. The decedent remained married to and living with Mary until the time of his death. On January 30, 1992, the decedent executed a will leaving all of his property to his wife, Mary. Only in the event that Mary should predecease the decedent were his children, Don and Melody, to inherit any of his property. If Mary predeceased the decedent, *742 one-half of his property was to be divided between Don and Melody, and one-half of his property was to be equally divided among Mary's three children. The statutory will was properly witnessed and notarized. At the time the will was executed in 1992, Melody was over the age of 23.
The decedent died on June 11, 1996. Mary, as testamentary executrix, filed a petition to probate the decedent's will on August 2, 1996. Mary subsequently obtained a judgment of possession, placing her in possession of all of the decedent's property, as set forth in his January 30, 1992 last will and testament.
In November 1996, Irene and Melody filed a petition for nullity of the decedent's will, and they sought an interest in the decedent's pension benefits. Melody sought to be recognized as a forced heir to the decedent's estate and placed in possession of the forced portion of his estate. Melody argued that she was a forced heir at the time the will was executed because in 1993, the Louisiana Supreme Court declared as unconstitutional, 1990 La. Acts No. 147, which act had attempted to redefine forced heirs as children under the age of 23 years.[2]See Succession of Lauga, 624 So.2d 1156 (La.1993) and Succession of Terry, 624 So.2d 1201 (La.1993). In light of this ruling, Melody asserted that the law in effect prior to the passage of 1990 La. Acts No. 147 applied and thus, she was a forced heir at the time the will was executed and was entitled to her forced portion. In response, the estate asserted that the law at the time of the decedent's death governed whether Melody was a forced heir. Because the law at the time of the decedent's death provided, both constitutionally and statutorily, that children over the age of 23 were not forced heirs, Melody was not a forced heir. See LSA-Const. Art. XII, Sec. 5 and LSA-C.C. art. 1493, as amended by 1995 La. Acts No. 1180, § 1. The estate additionally asserted that Melody was not a forced heir under the law in effect at the time the will was executed in November 1992. The plaintiffs subsequently amended their petition to assert a claim that LSA-R.S. 9:2501 was unconstitutional, and requested that the Attorney General of the State of Louisiana be served with a copy of the amending petition.
Also through the plaintiffs' petition, Irene sought a portion of the pension benefits resulting from the decedent's retirement from Dow Chemical Company (Dow). In response, the estate contended that the language of a written community property settlement executed by the decedent and Irene precluded Irene's claim to a portion of the pension benefits upon decedent's death.
The plaintiffs filed a motion for summary judgment as to both of their claims. The estate opposed the motion, and the trial court subsequently denied the motion for summary judgment. Prior to the scheduled trial date, the parties submitted the matter to the trial court for a decision on the briefs, memoranda, and certain exhibits. The trial court rendered judgment in favor of the estate, finding that Melody was not a forced heir at the time of the testator's death or at the time the will was executed. The trial court also found that the community property settlement between the parties contemplated distribution of the pension plan, thus, the clause in the agreement that the parties "discharge[d] each other from any further accounting to the [former] community" governed, and Irene was not entitled to any portion of the decedent's pension plan. The plaintiffs appeal from this judgment, raising three assignments of error.
*743 The first assignment of error contests the trial court's denial of the plaintiffs' motion in limine. The second assignment of error challenges the trial court's application of LSA-R.S. 9:2501 to deny Melody's forced heir claim. The third assignment of error attacks the trial court's denial of Irene's claim to the decedent's pension plan.

DENIAL OF MOTION IN LIMINE
Plaintiffs contend that the trial court should have granted Melody's motion in limine and excluded extrinsic evidence of the decedent's donative intent by striking any affidavits and other evidence submitted for the purpose of establishing the donative intent of the decedent. However, Melody failed to specifically identify the affidavit that she wanted stricken. Based on our review of the record, there is one affidavit that was arguably submitted to establish the decedent's donative intent. This was the affidavit of his wife, Mary, wherein she averred that the decedent communicated his desire to leave all of his assets to her at the time of his death. The estate initially submitted this affidavit with its opposition to the plaintiffs' motion for summary judgment, which motion was later denied by the trial court. However, in the pre-trial order prepared and submitted jointly by the parties on September 1, 1998, Mary's affidavit was not listed as an exhibit. Moreover, the estate made no reference to the affidavit or its contents in its trial brief that was submitted to the trial court on December 1, 1998, although the affidavit was attached to the trial brief.
The motion in limine was set for a hearing on the same day as the trial. However, prior to the trial date, the parties submitted the case to the trial court for decision on the briefs. In the trial court's reasons for judgment, it listed the stipulated exhibits as including Mary's affidavit. After denying the motion in limine, the trial court, without stating what he relied upon in reaching its decision, concluded that:
Melody ... was of full age and majority at [the] time of the execution of [the decedent's] will ... and was over the age of 23.
The will was executed ... prior to January 1st, 1996, and decedent died after December 31st, 1995. This falls under R.S. 9:2501.
Because Melody ... was over the age of 23, both at the time the testament was executed and at the time of death of the decedent, she is not a forced heir and does not inherit under this will."
Based on these reasons, we cannot say the trial court relied on Mary's affidavit, or any other extrinsic evidence regarding the decedent's donative intent regarding Melody, in rendering its decision. Accordingly, Melody has not established that any alleged error in admitting this affidavit, when compared to the record in its totality, prejudiced or had a substantial effect on the outcome of her case. See LSA-C.E. art. 103; Brumfield v. Guilmino, 93-0366, p. 12 (La.App. 1st Cir.3/11/94), 633 So.2d 903, 911, writ denied, 94-0806 (La.5/6/94), 637 So.2d 1056. Thus, the trial court did not err in denying the motion in limine. This assignment of error is without merit.

MELODY'S STATUS AS A FORCED HEIR
Through this assignment of error, Melody asserts that the trial court was wrong in ruling that she was not a forced heir of the decedent. In support of this assignment of error, Melody argues that it was wrong to apply LSA-R.S. 9:2501 and interpret it to conclude that she was not a forced heir. In erroneously interpreting LSA-R.S. 9:2501 to reach the trial court's result, Melody argues that the trial court inferentially retroactively applied LSA-R.S. 9:2501 and the 1995 amendment to Article XII, Section 5 of the Louisiana Constitution.
What is really at issue in this case is the interpretation and applicability of LSA-R.S. 9:2501, as amended by 1995 La. Acts *744 No. 1180, § 2. At the time of the decedent's death in June 1996, Section 2501[3] provided as follows:
Successions of persons who die after December 31, 1995; construction of testaments executed prior to January 1, 1996
A. The provisions of Act No. 1180 of the 1995 Regular Session shall become effective on January 1, 1996, and shall apply to the successions of all persons who die after December 31, 1995.
B. If the person dies testate, and the testament is executed before January 1, 1996, then the testator's intent shall be ascertained according to the following rules:
(1) That the testament shall be governed by the law in effect at the time of the testator's death in any of the following instances:
(a) When the testament manifests an intent to disinherit a forced heir or to restrict a forced heir to the legitime in effect at the time of the testator's death.
(b) When the testament leaves to the forced heir an amount less than the legitime in effect at the time the testament is executed.
(c) When the testament omits a forced heir and the language of the testament indicates an intent to restrict the forced heir to an amount less than the legitime in effect at the time the testament is executed.
(2) That in all other instances the testament shall be governed by the law in effect on December 31, 1995.
(3) That the term forced heir, as used above, shall mean a forced heir at the time the testament is executed.
Louisiana Revised Statute 9:2501 applies to the successions of all persons who die after December 31, 1995, leaving a testament that was executed before January 1, 1996. Succession of Boyter, 99-0761 (La.1/7/00), 756 So.2d 1122. Section B mandates that courts ascertain the testator's intent according to the rules provided in LSA-R.S. 9:2501. The statute provides for one of two mutually exclusive outcomes when a person whose testament was executed before January 1, 1996, dies after December 31, 1995. When the transitional provision is applied, either: (1) the testament complies with the requirements of B(1), in which case the law in effect at the time of the testator's death "shall" govern the testament, or (2) the testament does not comply with the requirements of B(1), in which case the law in effect on December 31, 1995 "shall" govern the testament. The provisions of subsections (a), (b), and (c) of B(1) are very specific and require that there be actual verbiage in the testament indicating an intent to cut off the forced heir's right of reduction. Boyter, 99-0761 at pp. 10,12.
The supreme court in Boyter gave express rules on how to apply subsections B(1)(a), (b) and (c) of LSA-R.S. 9:2501. It found that each of the three subsections of LSA-R.S. 9:2501 B(1) requires a clear and affirmative action by the testator. Boyter, 99-0761 at p. 13. We have carefully examined the supreme court's decision in Boyter that addressed the application of B(1)(a), (b) and (c) to the provisions of a will that omitted bequests to two children who were over the age of 23 when the will was written in 1991 (which was prior to the Louisiana Supreme Court's declaration in Lauga that 1990 La. Acts No. 147 was unconstitutional), and who died after the effective date of 1995 La. Acts No. 1180. Based on this opinion by the supreme court, we find that the only subsection under LSA-R.S. 9:2501 B(1) that could possibly apply in the present case is (b). Accordingly, we will discuss the application of LSA-R.S. 9:2501 B(1)(b) to the facts of the present case.
*745 Subsection B(1)(b) applies, and the law in effect at the time of the decedent's death applies, when the "testament leaves to the forced heir an amount less than the legitime in effect at the time the testament is executed." The clear language of this statute requires that the testament include some affirmative action to leave the forced heir something less than the legitime in effect at the time the testament was executed. The notion of the testament itself leaving some amount requires that the testament contain an affirmative statement as to amount. The testament must contain some positive statement relating to the person who would have been a forced heir prior to the effective date of the new law on forced heirship. Boyter, 99-0761 at pp. 14-15.
In Boyter, the testator omitted the plaintiffs from the legacy portion of his testament; thus, the court found that the omission of the two plaintiffs did not satisfy the requirement of B(1)(b). Boyter, 99-0761 at p. 15. In the present case, Melody, the person who would have been a forced heir prior to the effective date of the new forced heirship law, was not omitted. She was specifically referenced in the will, but only as an alternate beneficiary of part of the decedent's estate. As an alternate beneficiary, the only way that Melody would inherit any part of the decedent's estate was if the primary beneficiary of the estate, Mary, the decedent's wife at the time of his death, predeceased the decedent. We find that this contingency beneficiary status constituted an affirmative action to leave the forced heir (Melody) something less than the legitime in effect at the time the testament was executed.[4] Thus, in this fact-specific case, we find that B(1)(b) applies, and the law in effect at the time of the testator's death governs Melody's status as a forced heir.
Under the law in effect at the time of the decedent's death, Melody was not a forced heir because she was over the age of 23. See LSA-C.C. art. 1493, as amended by 1995 La. Acts. No. 1180, § 1. Thus, the trial court's conclusion was correct that Melody was not a forced heir.

CONSTITUTIONALITY CHALLENGE TO LSA-R.S. 9:2501
We note that Melody filed an amending petition in the trial court, simply asserting that LSA-R.S. 9:2501 was unconstitutional. The parties did not brief the issue of the statute's constitutionality at the trial court level, nor was a contradictory hearing held on the constitutionality issue. In fact, the trial court never ruled on the constitutionality allegations set forth in this amending petition.
We further note that in her brief, Melody does not assign as error the trial court's failure to determine the constitutionality of LSA-R.S. 9:2501. The only reference made to the potential unconstitutionality of this statute is contained in Melody's argument of her second assignment of error, wherein Melody notes that she asserted LSA-R.S. 9:2501 was unconstitutional through an amending petition. It is unclear to us from the amending petition, as well as from Melody's appellate brief, what the basis is for Melody's contention that LSA-R.S. 9:2501 is unconstitutional.
The constitutionality of a statute must first be questioned in the trial court, not the appellate courts. Additionally, the unconstitutionality of a statute must be specially pleaded and the grounds for the claim particularized. The requirement of specially pleading the unconstitutionality *746 of a statute in pleadings implies that this notable issue will receive a contradictory hearing, wherein all parties will be afforded the opportunity to brief and argue the issue. The record of the proceeding could then be reviewed to determine whether the party attacking the statute sustained his or her burden of proof, and whether the trial court attempted to construe the statute so as to preserve its constitutionality. Vallo v. Gayle Oil Co., Inc., 94-1238, p. 8 (La.11/30/94), 646 So.2d 859, 864-65.
In the present case, we find that the requirement of specially pleading the unconstitutionality of a statute and particularizing the grounds thereof was not met by Melody. Her blanket assertion that "9:2501, as applied to Melody Ann Barthel, is unconstitutional under the Louisiana Constitution (1974) in violation of Article 12 Section 5 Constitution of Louisiana 1974" is insufficient to apprise the estate, or this court, of the particularized grounds for the contention. See Craig v. Scandia, Inc., 25,707, (La.App. 2nd Cir.3/30/94), 634 So.2d 944, 946, writ denied, 94-1119 (La.6/24/94), 640 So.2d 1349 (specially pleaded and particularized grounds requirement not met where petition failed to elaborate on how due process rights were violated, there were no specific allegations to support the claim of unconstitutionality, and the trial court did not rule on the constitutionality issue).
Accordingly, in the interest of justice, we remand this case to the trial court to allow Melody to specially plead the particularized facts supporting her contention of the unconstitutionality of LSA-R.S. 9:2501, and for the issue to be fully briefed and litigated. See LSA-C.C.P. art. 2164; Vallo, 646 So.2d at 866.

DENIAL OF IRENE'S CLAIM TO DECEDENT'S PENSION BENEFITS
Irene contends that the trial court erred in finding that the pension plan was included in the provision of the community property settlement whereby the parties discharged each other from further accounting to the community that formerly existed between them. Irene contends that because the pension plan was not identified in the community property settlement, the discharge provision does not apply to the pension plan, as it was not considered at the time of the community property settlement. The trial court found differently.
In reviewing this decision by the trial court, we are bound by the manifest error standard of review. Thus, our inquiry is not whether the trial court was right or wrong, but whether the finding was reasonable in light of the record reviewed in its entirety. Stobart v. State, through Department of Transportation and Development, 617 So.2d 880, 882 (La.1993).
The evidence before the trial court, with respect to Irene's claim to an interest in the pension plan included the written settlement of the community between Irene and the decedent; administrative documents from the decedent's former employer, Dow; and affidavits from Arlene Garver, legal assistant of Dow, and Melvin M. Michel, the decedent's financial advisor for eleven years prior to the decedent's death.
The Dow documents pertained to the decedent's identification of Mary as his spouse and his selection of her as the beneficiary of the survivor option of his pension plan. Ms. Garver's affidavit set forth pertinent dates regarding the decedent's rights in the pension plan. In Mr. Michel's affidavit, he attested that the community property settlement included the retirement benefits, and that the decedent paid Irene $2,200 in cash rather than the retirement benefits, because Irene wanted cash at the time of the settlement. The fact that the decedent was not vested in his pension plan at either the time of his divorce from Irene, or at the time the community property settlement was executed, rendered the decedent's entitlement to the pension plan uncertain and the value of the plan unknown. These facts lend further support to the statements contained in Mr. Michel's affidavit that Irene *747 received cash consideration for any rights she may have had in the decedent's pension plan.
Additionally, we note that the decedent retired in January 1988 and immediately began receiving benefits under the pension plan. However, Irene did not make a claim to these benefits until after the decedent died, nearly eight years after his retirement.
In light of this evidence, we cannot say that the trial court was manifestly erroneous in concluding that the parties considered the pension plan at the time of the community property settlement and thus, that the discharge provision contained therein precluded Irene's claim to the pension plan.

CONCLUSION
For these reasons, the judgment of the trial court is affirmed.[5] The matter is remanded to the trial court to allow the plaintiffs to amend their amending petition regarding the constitutionality claim, and for briefing and full litigation of the constitutionality issue. Costs of this appeal are assessed to the plaintiffs.
AFFIRMED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.
NOTES
[1] Hon. William F. Kline, Jr., retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] Through this act's amendment of Article 1493, the definition of a forced heir also included descendants of any age who, because of mental incapacity or physical infirmity, were incapable of taking care of their persons and administering their estates. However, as this part of the definition of a forced heir is not relevant to the issues raised in this appeal, we will not refer to this part of the definition in the remainder of our discussion.
[3] This statute was subsequently amended by 1996 La. Acts, 1st Ex.Sess., No. 77, § 2. However, this amendment was intended to clarify the language in subsections B(1)(a)(b) and (c), by inserting "under the law" between "legitime" and "in effect."
[4] Pursuant to Lauga and Terry, the law in effect prior to the enactment of 1990 La. Acts No. 147 applied. Thus, at the time the decedent's will was executed, at least ¼, and as much as ½ of a testator's estate constituted the forced portion, depending on the number of forced heirs left by the testator. See Article 1493 of the Louisiana Civil Code of 1870, as amended by 1989 La. Acts No. 788, § 1. The decedent's will did not unconditionally leave either ¼ or ½ of his estate to Melody. Instead, Melody would only inherit if Mary predeceased the decedent.
[5] The estate filed a motion to strike a rebuttal brief filed by the plaintiffs on the ground that the rebuttal brief was not filed timely. Because we affirm the judgment in favor of the estate, we need not address the motion to strike.