Dr. Joseph **BIANCA**

v.

Maury **HERMAN**, et al.

No. Civ.A. 00–1775.

United States District Court, E.D. Louisiana.

March 28, 2001.

John Gerard Allelo, Marti M. Ogden, Crawford & Lewis, Baton Rouge, LA, for Plaintiff.

Marshall Mc Alis Redmon, Phelps, Dunbar, LLP, Baton Rouge, LA, Roy Clifton Cheatwood, William Phillips Dunn, Phelps Dunbar, LLP, New Orleans, LA, for Defendants.

BERRIGAN, District Judge.

Before the Court is Defendant's Motion for Summary Judgment. After reviewing the arguments of counsel, the record and the applicable law, IT IS ORDERED that the Motion is hereby GRANTED.

*Background*

In early 1999, Dr. Joseph Bianca, who practices medicine in Texas, attempted to locate a plaintiff's lawyer in Louisiana to pursue a possible medical malpractice claim arising from the death of his mother, who passed away on April 13, 1998. Bianca contacted Al Ellis, a Texas attorney who had represented his wife in another matter, to obtain names of attorneys in Louisiana. Ellis recommended Defendant Maury Herman and another attorney. In mid-February 1999, Bianca contacted Herman's firm, and on February 17, 1999, was interviewed by Karen Readinger, a paralegal employed at the time by Defendant's law firm, Herman, Herman, Katz & Cotlar, L.L.P.[1] Two days later, Mr. Herman wrote a letter to Dr. Bianca explaining that he was not interested in taking the case, but recommended two other Louisiana attorneys for Dr. Bianca to contact if he was interested in pursuing the matter.[2] In this letter, Herman did not inform Bianca that the statute of limitations for a medical malpractice claim in Louisiana was only one year, and that the claim would expire in less than two months (April 13, 1999).

Dr. Bianca did not immediately contact either of the attorneys that Herman recommended, explaining in his deposition that, as a doctor, he had some distaste for the idea of bringing a medical malpractice claim.[3] In fact, Dr. Bianca had previously experienced some criticism from his social circle after his wife attempted to enter into medical malpractice litigation.[4] However, in May of that year, Bianca discussed his potential malpractice case regarding his mother with his future son-in-law, Jim

---

**1.** In his deposition, Bianca conceded that he knew Readinger was a paralegal and not an attorney. *See* Defendant's Memorandum, Exh. A at 89—91 (hereinafter "Bianca Deposition").

**2.** *See* Defendant's Memorandum, Exh. B.

**3.** *See* Bianca Deposition at 98.

**4.** *See id.* at 77.

Manchee. At that time, Manchee, although licensed to practice law in Texas, informed Bianca that the statute of limitations for medical malpractice cases in Louisiana was one year.[5] Manchee contacted colleagues at a law firm in Lafayette, Louisiana, and retained Alec Alexander for the purposes of ascertaining whether Bianca's claim was still viable.[6] Mr. Alexander, in turn, asked Kenneth DeJean to look into whether there was a way around the one year limitation.[7] Alexander delivered records relating to the potential medical malpractice claim to Mr. DeJean on May 27, 1999.[8] On June 8, 1999, DeJean personally advised Bianca that he "felt certain the potential medical malpractice claims had prescribed."[9] At that time, Bianca told DeJean that "he knew of the prescription issue after having spoken with a Texas attorney."[10] Nevertheless, DeJean said that he "would again review the matter."[11] On June 23, 1999, DeJean spoke with Bianca on the telephone, confirming that the statute of limitations period had in fact run, and wrote a letter to Alexander to the same effect.[12]

*Standard of Review*

A district court can grant a motion for summary judgment only when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)). When considering a motion for summary judgment, the district court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir.1986). The court must find "[a] factual dispute . . . [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party . . . [and a] fact . . . [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir.1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

"If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir.1995) (citing *Celotex*, 477 U.S. at 322—24, 106 S.Ct. 2548, and Fed.R.Civ.P. 56(e)). The mere argued existence of a factual dispute will not defeat an otherwise properly supported motion. *See Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. "If the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. *Id.* at 249—50, 106 S.Ct. 2505 (citations omitted).

---

5. *See id.* at 101—03.

6. *See id.* at 102—05, 108—09.

7. *See* Defendant's Memorandum, Exh. C (hereinafter "DeJean Affidavit"); *see id.*, Exh. D (hereinafter "DeJean Letter").

8. *See* DeJean Affidavit at ¶5; DeJean Letter; Bianca Deposition at 118—19.

9. *See* DeJean Affidavit at ¶7.

10. *See id.* at ¶8.

11. *See id.* at ¶7.

12. *See* DeJean Letter; DeJean Affidavit at ¶10. At his deposition, Bianca maintained that he had not previously seen the letter between Alexander and DeJean. *See* Bianca Deposition at 113.

*Analysis*

■ From the undisputed facts in the record, the Court has determined that any claim of legal malpractice Bianca may have had against Herman is preempted.[13] Under Louisiana law, claims for legal malpractice, except those sounding in fraud, are preempted if not filed "within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered." La. R.S. 9:5605(A). This one-year period is peremptive, *see* La. R.S. 9:5605(B), which means that the running of this period "may not be renounced, interrupted, or suspended." *See* La. Civ.Code 3461.[14]

■ Plaintiff insists that there is a disputed issue of material fact regarding when Bianca knew or should have known of facts sufficient to provide notice that legal malpractice may have been committed. However, Bianca himself acknowledged that he learned from his (now) son-in-law, Manchee, that the prescriptive period for medical malpractice in Louisiana is one-year in May or June of 1999.[15] Since Dr. Bianca's mother died in April 1998, the year had expired in April 1999. This Court determines that May has to be the appropriate date because in late May, Bianca provided Alexander with medical records (which Alexander subsequently gave to DeJean) for the purpose of determining whether there were any reasons why the claim had not yet expired.[16] At his deposition, Plaintiff admitted that he could not state conclusively with whom he had spoken and the exact content of the conversations on June 8 and June 23, 1999. However, Mr. DeJean states in his affidavit that he informed Bianca on June 8, 1999, that the medical malpractice claims were now stale.[17] Therefore, under Louisiana law, Bianca was required to initiate his action for legal malpractice against Herman by June 8, 2000.

The evidence in the record cannot sustain a finding that Bianca did not know about the possible legal malpractice until June 23, 1999, the only date that would allow Plaintiff's claims to survive. The record demonstrates that he knew of the underlying facts to support his claim of legal malpractice (i.e., that the medical malpractice claims had a statute of limitations period of one year in Louisiana, and that Herman did not inform him of this when sending the letter turning down representation) in May 1999.[18] *See Turnbull*

---

13. For this reason, the Court need not analyze the merits of Plaintiff's claims that the contacts between the Herman law firm and him would be sufficient to trigger any duty pursuant to an attorney-client relationship.

14. *See also* La. Civ.Code 3458 ("Peremption is a period of time fixed by law for the existence of a right. Unless timely exercised, the right is extinguished upon the expiration of the peremptive period.").

15. *See* Bianca Deposition at 101—03.

16. *See* DeJean Affidavit at ¶ 4, DeJean Letter; Bianca Deposition at 116—18.

17. The Court finds that the statements contained in the affidavit of Mr. DeJean regarding the contents of the two phone calls have not been undermined or called into question. Plaintiff specifically stated in his deposition that he did not remember the exact nature of the phone calls and would defer to the records of Mr. Alexander and Mr. DeJean regarding the specifics of his telephone conversations with them. *See* Bianca Deposition at 116—17. Nevertheless, it is immaterial whether the conversations happened on June 8 or June 23 because the Court finds that the undisputed facts show that Bianca knew of the one-year prescription period in May 1999.

18. Or, at the latest, on June 8, 1999, when informed by Mr. DeJean. *See* discussion *supra* note 17.

*v. Thensted,* 757 So.2d 145, 150 (La.App. 4th Cir.2000); *Carroll v. Wolfe,* 754 So.2d 1038, 1041 (La.App. 1st Cir.1999). Therefore, by waiting to file this lawsuit until June 16, 2000, Bianca lost the opportunity to recover from Herman for any harm he may have suffered as a result of the failure of Herman to inform him of the running of the prescriptive period.

*Conclusion*

Therefore, IT IS ORDERED that Defendant's Motion for Summary Judgment is HEREBY GRANTED. Judgment shall be entered in favor of Defendant and Plaintiff's complaint is hereby DISMISSED WITH PREJUDICE.