806 So.2d 110 (2001)
Howard A. PEREZ
v.
Richard C. TRAHANT.
No. 2000 CA 2372.
Court of Appeal of Louisiana, First Circuit.
December 28, 2001.
Rehearing Denied February 21, 2002.
*112 Geoffrey H. Longenecker, Madisonville, Louisiana, for plaintiff/appellant, Howard A. Perez.
Michael P. Mentz, Metairie, Louisiana, for defendant/appellee, Richard C. Trahant.
Before GONZALES, KUHN, and CIACCIO[1], JJ.
KUHN, Judge.
Plaintiff-appellant, Howard Perez, appeals a judgment dismissing as untimely his demands against defendant-appellee, Richard Trahant, who legally represented him in an earlier-filed personal injury action. We affirm in part, reverse in part and remand.
While Trahant was an associate with a law firm, he began legal representation of Perez for personal injuries sustained in May 1994. When Trahant left the firm, he continued to represent Perez. During a mediation conference in Spring 1997, at which both Trahant and Perez were present, Liberty Mutual, a defendant in Perez's personal injury action, made various settlement offers, the highest of which was $120,000. Trahant contends that Perez was emphatic that the offer was insufficient, and Perez asserts that he instructed Trahant to take the $120,000, but the attorney did not. They agree, however, that the settlement offer made by Liberty Mutual at the mediation conference was not accepted.
Perez's personal injury action proceeded to trial. And while their respective recollection of the course of events preceding the jury trial is not in conformity with one another, the parties do not dispute that immediately before trial, Liberty Mutual reduced its offer to $75,000. After the presentment of evidence, on April 14, 1997, the jury returned a verdict which failed to award any damages to Perez. With Trahant legally representing him, Perez appealed the trial court's judgment. On appeal, that judgment was affirmed. See Perez v. Liberty Mut. Ins., 97-2532 (La. App. 1st Cir. 11/6/98), 728 So.2d 31 (an unpublished opinion). And the Louisiana Supreme Court subsequently denied writs. See Perez v. Liberty Mut. Ins., 99-0077 (La.2/26/99), 738 So.2d 589.
On September 14, 1999, Perez filed a petition, alleging that Trahant is liable to *113 him for the damages he sustained as a result of the attorney's legal malpractice, which he averred was due to Trahant's failure to: (1) recommend that Perez accept the settlement offers made by Liberty Mutual; and (2) ascertain and follow Perez's directive to accept Liberty Mutual's settlement offers.
Trahant filed a peremptory exception of prescription, urging that Perez's claim was asserted untimely.[2] After a hearing, wherein evidence was adduced, the trial court granted Trahant's exception of prescription and dismissed "any and all of [Perez's] demands, with prejudice," ordering each party to bear his own costs. This appeal by Perez followed. On appeal, Trahant filed a motion seeking to convert his exception of prescription to an exception of no cause of action raising the issue of accrual of the peremptive period, which we have referred to the merits.
In addition to maintaining the trial court erred by dismissing his legal malpractice claim as untimely asserted, Perez suggests, if that claim was untimely asserted, then the time limitations set forth in La. R.S. 9:5605 are unconstitutional as applied in his case.

TIMELINESS OF LEGAL MALPRACTICE CLAIM

Statutory Time Limitation for Filing Malpractice Claims
The time limitations for filing a legal malpractice claim are set forth in La.R.S. 9:5605 which provides:
A. No action for damages against any attorney at law duly admitted to practice in this state, any partnership of such attorneys at law, or any professional corporation, company, organization, association, enterprise, or other commercial business or professional combination authorized by the laws of this state to engage in the practice of law, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide legal services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered; however, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.
B. The provisions of this Section are remedial and apply to all causes of action without regard to the date when the alleged act, omission, or neglect occurred. However, with respect to any alleged act, omission, or neglect occurring prior to September 7, 1990, actions must, in all events, be filed in a court of competent jurisdiction and proper venue on or before September 7, 1993, without regard to the date of discovery of the alleged act, omission, or neglect. The one-year and three-year periods of limitation provided in Subsection A of this Section are peremptive periods within *114 the meaning of Civil Code Article 3458 and, in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended.
C. Notwithstanding any other law to the contrary, in all actions brought in this state against any attorney at law duly admitted to practice in this state, any partnership of such attorneys at law, or any professional law corporation, company, organization, association, enterprise, or other commercial business or professional combination authorized by the laws of this state to engage in the practice of law, the prescriptive and peremptive period shall be governed exclusively by this Section.
D. The provisions of this Section shall apply to all persons whether or not infirm or under disability of any kind and including minors and interdicts.
E. The peremptive period provided in Subsection A of this Section shall not apply in cases of fraud, as defined in Civil Code Article 1953.
The one and three-year periods for legal malpractice actions found in La. R.S. 9:5605 are peremptive periods. Coffey v. Block, 99-1221, p. 6 (La.App. 1st Cir. 6/23/00), 762 So.2d 1181, 1185-86, writ denied, 2000-2226 (La.10/27/00), 772 So.2d 651. Peremption differs from prescription in several respects. Prescription prevents the enforcement of a right by legal action, but it does not terminate the natural obligation; peremption, however, extinguishes or destroys the right. Public policy requires that rights to which peremptive periods attach are to be extinguished after passage of a specified period. Thus, nothing may interfere with the running of a peremptive period. It may not be interrupted or suspended or renounced. And exceptions such as contra non valentem are not applicable. But as an inchoate right, prescription may be renounced, interrupted, or suspended; and a contra non valentem exception applies to the statutory prescription period where in fact and for good cause a plaintiff is unable to exercise his cause of action when it accrues. Hebert v. Doctors Memorial Hospital, 486 So.2d 717, 723 (La.1986). Therefore, whether the one-year time limitation commences on the date of the alleged act, omission, or neglect occurred or within one year of the date the alleged act, omission, or neglect was discovered or should have been discovered, the accrual may not be suspended, interrupted, or renounced. Thus, the time limitations of Section 5605A are not susceptible to an application of the continuous representation rule, a hybrid form of contra non valentem extended to legal malpractice cases.[3]

Motion to Convert Exception to No Cause of Action Based on Peremption
In seeking conversion of his previously-filed exception of prescription to a no *115 cause of action based on the grounds of peremption, Trahant relies on Coffey, 99-1221 at p. 8, 762 So.2d at 1186. The Coffey court pointed out the general rule that the peremptory exception of no cause of action is the correct procedural device for raising the issue of peremption, noting that this exception requires that the petition be reviewed with the well-pleaded allegations of fact accepted as true. And the focus is directed at whether, on the face of the petition, the plaintiff is legally entitled to the relief sought. Coffey, 99-1221 at p. 8, 762 So.2d at 1186.
Accepting as true Perez's well-pleaded allegations, we cannot dismiss his legal malpractice claim via this procedural vehicle. This is because the only relevant dates Perez included in his factual allegations of continuous representation are the date of May 24, 1994, as the establishment of the attorney-client relationship, and the date of February 26, 1999, when the Louisiana Supreme Court denied writs. And according to Perez's petition, it was "[d]uring the course of litigation," that Trahant "secured a settlement offer in the amount of $120,000 which [Trahant] recommended not be accepted...." He further averred that it was "[d]uring the course of litigation, and on the morning of trial, when the $120,000 was again reiterated" and "[Perez] advised [Trahant] to accept that offer.... [Trahant] thereupon decided himself to reject the offer and to try the case."
Thus, on the face of Perez's artfully-drafted pleadings, the matter is not clearly untimely. It is only when evidence submitted in conjunction with the peremptory exception asserting the untimely filing of the legal malpractice action is considered that the date of the alleged malpractice is able to be determined. Because Trahant cannot prevail in recovering the relief he seeksan affirmance of the trial court's judgment dismissing Perez's legal malpractice claimwe decline, on appeal, to convert his exception of prescription into a no cause of action exception.

Exception of Prescription Based on Accrual of Peremptive Period
Louisiana Civil Code art. 3460 provides, "Peremption may be pleaded or it may be supplied by a court on its own motion at any time prior to final judgment," in contrast to La. C.C.P. art. 927B which prohibits the court from supplying the objection of prescription. And the jurisprudence has examined the issue of whether a claim is untimely based on accrual of a period of peremption by way of the exception of no cause of action. See Coffey, 99-1221 at p. 8, 762 So.2d at 1186; and Dowell v. Hollingsworth, 94-0171 (La.App. 1st Cir. 12/22/94), 649 So.2d 65, writ denied, 95-0573 (La.4/21/95), 653 So.2d 572 (challenging timeliness of legal malpractice claims). See also Azar-O'Bannon v. Azar, XXXX-XXXX (La.App.4th Cir. 9/27/00), 770 So.2d 458, writ denied, XXXX-XXXX (La.1/12/01), 781 So.2d 557; and Russland Enterprises, Inc. v. City of Gretna, 98-676 (La.5th Cir. 1/26/99), 727 So.2d 1223, writ denied, 99-0980 (La.5/28/99), 743 So.2d 669 (challenging timeliness of claims to annul final judgment obtained by fraud or ill practice).
Although the no cause of action exception is generally the correct procedural vehicle to assert accrual of the peremptive period, in a case such as this where the court has not raised the objection of prescription but rather a party objects to a claim on the basis of the accrual of the peremptive period, we believe precepts of judicial economy require the matter be treated similarly to an objection of prescription insofar as the receipt of evidence is concerned. Indeed, the jurisprudence has treated the accrual of peremptive periods as exceptions of prescription. See, e.g., Carroll v. Wolfe, 98-1910 (La.App. 1st Cir. 9/24/99), 754 So.2d 1038; Creighton v. *116 Bryant, 34,893 (La.App.2d Cir.6/20/2001), 793 So.2d 275; Davis v. Coregis Ins. Co., XXXX-XXXXX (La.App. 3d Cir.12/27/2000), 789 So.2d 7, writ denied, XXXX-XXXX (La.3/30/2001), 788 So.2d 1192. Mindful that in Louisiana every pleading shall be construed to do substantial justice, see La. C.C.P. arts. 852 and 865, this court is mandated to render a judgment which is just, legal, and proper, see La.C.C.P. art. 2164, and the jurisprudence, in this appeal, we will treat Trahant's peremptory exception asserting accrual of the peremptive period as an exception of prescription insofar as review of the evidence submitted by the parties is concerned.
When the peremptory exception of prescription is pleaded before the answer, it shall be tried and decided in advance of the trial of the case. La. C.C.P. art. 929A. On the trial of a peremptory exception pleaded prior to the trial of the case, evidence may be introduced to support or controvert any of the objections pleaded, when the grounds thereof do not appear from the petition. La.C.C.P. art. 931. When evidence has been introduced, the trial court is not bound to accept as true the allegations of the petition in its trial of the peremptory exception of prescription. Delmore v. Hebert, 99-2061, p. (La.App. 1st Cir. 9/22/2000), 768 So.2d 251; Ford Motor Credit v. Bower, 589 So.2d 571, 574 (La.lst Cir.1991). When evidence is received on the trial of the peremptory exception, the factual conclusions of the trial court are reviewed by the appellate court under the manifest error-clearly wrong standard as articulated in Stobart v. State Through Dep't of Trans'p and Dev., 617 So.2d 880 (La.1993). If the findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed evidence differently. Id. at 882-83.

Accrual of Peremptive Period Commencing From Date of Act, Omission, or Neglect
After a review of the parties' conflicting testimony about the settlement offers, the trial court specifically found:
The only persons testifying were the two parties.... Both [Perez and Trahant] also testified in court that the decision to appeal the judgment of the jury [in the personal injury action] belonged to the other party. Therefore, the disputed facts became the basis for a matter of credibility on the witness stand.
This Court finds that logically the testimony of the defendant is more likely than not to be true, and that the testimony of the plaintiff is more likely than not to be false.... The decision to settle or not to settle was [Perez's] decision, and he had only to inform his attorney of his desires.
Upon the rendering of judgment, by the jury on April 14, 1997, and by the [trial court] on April 24, 1997, [Perez] was well aware that he had lost the case and possibly would also lose it on appeal. The one-year [statutorily-imposed time limitation for filing legal malpractice claims] began to run on April 14, 1997 and expired on April 14, 1998. This lawsuit was not filed until September 14, 1999.
Therefore, this Court ... grants the Exception of Prescription filed by [Trahant].
Our review of the testimonial evidence shows that Perez does not dispute he was present at the mediation conference prior to trial when the initial offer of $120,000 was made, and that he was in the courtroom during the pre-trial settlement discussions which resulted in the $75,000 offer. *117 He also acknowledged he was present when the jury returned its verdict failing to award any damages on April 14, 1997. Thus, the act, omission, or neglect, which forms the basis of the legal malpractice because of Trahant's alleged failure to: (1) recommend that Perez accept the settlement offers made by Liberty Mutual and (2) ascertain and follow Perez's directive that those offers be accepted, most certainly occurred no later than April 14, 1997.
A reasonable evidentiary basis exists for the trial court's factual conclusion that the alleged act, omission, or neglect giving rise to the legal malpractice claim against Trahant occurred at the latest on April 14, 1997, the date of the return of the jury's verdict, and that it accrued on April 14, 1998.

Accrual of Peremptive Period From Date Act, Omission, or Neglect Wasor Should Have BeenDiscovered
In Carroll, 98-1910 at p. 6, 754 So.2d at 1041, without discussion of whether the one-year time limitation which commences on the date that the alleged act, omission, or neglect wasor should have been discovered is a prescriptive or peremptive period, relying on cases rendered prior to the enactment of the statute, and referring to the one-year time limitation as "prescription" this court noted that accrual "commences to run when a claimant knew or should have known of the existence of facts that would have enabled him to state a cause of action for legal malpractice." Elaborating further, the Carroll court indicated that the standard imposed is that of a reasonable person, which is designed to establish a rule that any plaintiff who had knowledge of facts which would place a reasonable person on notice that malpractice may have been committed shall be held to have been subject to the commencement of the one-year time limitation by virtue of such knowledge even though he asserts a limited ability to comprehend and evaluate the facts. The focus is directed to the appropriateness of the claimant's actions or inactions. Id.
The Carroll court concluded that vendors of a semi-submersible rig, sold pursuant to promissory note and mortgage, had sufficient knowledge to excite the attention of a reasonable person thereby commencing the accrual of the time limitation. The legal malpractice suitfiled more than one year after knowledge of the seizure of the rig which was ultimately sold for payment of dockage fees without prior notice to plaintiffsagainst the attorney who failed to record their mortgage was, therefore, untimely.
In this appeal, Perez asserts that although the continuous representation rule does not apply to suspend the accrual of the time limitation, Trahant's representation that "the prospects of the appeal [of the judgment dismissing the personal injury action] were `very good' ... should serve to eliminate any contention that [Perez] should have been `on notice that malpractice may have been committed.'"
Trahant testified that he told Perez he believed they had some very good issues for appeal, but denied having assured his former client that they would win on appeal. According to Trahant's recollection, he advised Perez that if he wanted Trahant to handle the appeal, Trahant would pay half the costs, and that Perez could pay the other half. And Perez wrote him a check.
According to Perez, Trahant called him after they lost the personal injury case, advising Perez that their only option was to go to a higher court. And Perez recalled that Trahant told him he did not have the money to pay for all the costs of the appeal, which Trahant approximated at $3000. Perez said that he responded by asking Trahant what he wanted Perez to *118 do. According to Perez, Trahant asked him to pay one-half the costs. And Perez testified at the exception hearing, "I'm thinking if [Trahant] thoughthe let me believe that we had a good chance on appeal. So I figuredI gave him ... $1300."
The trial court heard conflicting testimony from the parties about the decision to appeal the personal injury action subsequent to the jury's verdict and resolved that conflict in favor of Trahant. By finding "the testimony of [Trahant] is more likely than not to be true, and ... the testimony of [Perez] is more likely than not to be false" after establishing that the parties' testimony was in conflict on the issue of to whom the decision to appeal belonged, through credibility determinations, the trial court concluded that Perez knowingly decided to pursue the appeal. It is also obvious from these factual findings that the trial court concluded Perez knew that losing on appeal was a possibility. By dismissing his legal malpractice claim, the trial court determined that knowledge of the possibility of losing on appeal is, as required by Carroll, sufficient notice to a reasonable person that the malpractice Perez avers to be the victim of may have been committed.
We find that with the jury's return of a verdict failing to award any damages, a reasonable person's attention is excited that the malpractice Perez alleges Trahant committed against him had occurred. In other words, where a client avers that the attorney failed: (1) to follow his specific directive to settle a matter; and (2) to recommend that the matter be settled, and the jury returns with a verdict which fails to award any damages, the attention of a reasonable person is excited that the malpractice which Perez alleged has occurred. Therefore, despite Perez's assertion of his limited ability to comprehend and evaluate the facts, the trial court's conclusion that a reasonable person would be placed on notice under the facts of this case is not erroneous.
Both factually and as required by La. R.S. 9:5605, knowledge of the alleged malpractice existed on the date of the jury's verdict. Peremption cannot be suspended, interrupted or renounced. Under the facts of this case, Perez cannot seek suspension of peremption by insisting on application of continuous representation principles. Because the trial court correctly determined that Perez discovered or should have discovered the alleged act, omission, or neglect on April 14, 1997, the one-year peremptive period accrued on April 14, 1998. Having failed to file his legal malpractice claim until September 19, 1999, Perez's action is untimely.[4]

*119 CONSTITUTIONALITY CHALLENGE TO LA.R.S. 9:5605
In this appeal, Perez asserts that the time limitations set forth in La.R.S. 9:5605 are unconstitutional as applied in his case.
In his amended petition, Perez alleged:
To the extent that [his] claim would be barred by any prescriptive and/or [peremptive] period provided by La.R.S. 9:5605, the said statute is unconstitutional on its face and/or as applied to [him] under La. Const. Art. 1, § 22 requiring the courts to be open to [him] and that he have an adequate remedy by due process of law, that he be afforded the right to counsel of his choice with the denial of due process, and further under the Sixth Amendment and Fourteenth Amendments of the United States Constitution providing for the right to counsel and due process of law, reference being made to the entirety of the state and federal constitutions in the mater[matter].
We find this blanket assertion of unconstitutionality insufficient to properly place the issue before this court for review. See In re Succession of Barthel, 99-1573, p. 8 (La.App. 1st Cir. 6/23/00), 762 So.2d 740, 746, writ denied, 2000-2235 (La.10/27/00), 772 So.2d 652.
The constitutionality of a statute must first be questioned in the trial court, not the appellate courts. Additionally, the unconstitutionality of a statute must be specially pleaded and the grounds for the claim particularized. The requirement of specially pleading the unconstitutionality of a statute in pleadings implies that this notable issue will receive a contradictory hearing, wherein all parties will be afforded the opportunity to brief and argue the issue. The record of the proceeding can then be reviewed to determine whether the party attacking the statute sustained the requisite burden of proof, and whether the trial court attempted to construe the statute so as to preserve its constitutionality. Vallo v. Gayle Oil Co., Inc., 94-1238, p. 8 (La.11/30/94), 646 So.2d 859, 864-65.
The parties did not brief the issue of the statute's constitutionality at the trial court level, at the hearing of the peremptory exception the issue of constitutionality was not addressed, and the trial court did not rule on the constitutionality allegations set forth in the amended petition. Additionally, although not dispositive, we note that the Louisiana Attorney General was never served a copy of the pleading, which contests the constitutionality of La.R.S. 9:5605. See La.R.S. 49:257B.[5] In the interest of justice, the trial court's broad dismissal of "any and all of Perez's demands," is reversed insofar as his request for a determination that La.R.S. 9:5605 is unconstitutional. We remand to the trial court to allow Perez to specially plead the particularized facts supporting his contention that La.R.S. 9:5605 is unconstitutional, and for the issue to be fully briefed and litigated. See LaC.C.P. art. 2164; In Re Succession of Barthel, 99-1573 at p. 9, 762 So.2d at 746.

*120 DECREE
For all these reasons, the trial court's judgment dismissing Perez's claim for legal malpractice is affirmed in part,[6] reversed in part and remanded for further proceedings consistent with this opinion. All costs of this appeal are assessed against plaintiff, Howard A. Perez.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
GONZALES, J., concurs and assigns reasons.
CIACCIO, J., dissents and assigns reasons.
CIACCIO, Judge, dissenting.
I respectfully dissent.
The record shows that the alleged act or omission that may constitute malpractice by Mr. Trahant occurred on April 14, 1997 when he failed to accept a settlement offer on the morning of the trial. Mr. Perez filed his malpractice suit in September 1999, less than three years after the alleged act or omission. Thus, Mr. Perez's malpractice claim is not perempted under LSA-R.S. 9:5606.
Next, we must consider whether Mr. Perez's claim had prescribed. LSA-R.S. 9:5605(A) also provides for a prescriptive period of "within one year from the date that the alleged act, omission, or neglect is discovered." The majority agrees with the trial court's conclusion that prescription began to run on April 16, 1997, the date that the jury returned its verdict[7] and Mr. Perez should have discovered the malpractice.[8] I disagree.
The trial judge was clearly wrong in concluding that prescription started to run when the jury reached its verdict. There is no evidence in the record to support an inference that Mr. Perez knew or should have known of any act of malpractice at this time. In his reasons for judgment, the judge reasoned that Mr. Perez "was well aware that he had lost the case and possibly would also lose it on appeal." But "possibly" is not proof of knowledge or discovery. Most appeals are unsuccessful. But appellate courts have the power to reverse or amend judgments and do so *121 when appropriate. Clearly, Mr. Trahant believed the appeal had merit or he would not have wasted his time or his own money in pursuing the litigation all the way through the state supreme court.
LSA-R.S. 9:5605 states that the "prescriptive and preemptive period shall be governed exclusively by this Section." Prescription does not begin to run until the victim either discovers or should have discovered the negligent act. At the conclusion of the trial, neither Mr. Perez nor Mr. Trahant had actual knowledge of any act of malpractice. Mr. Trahant's conduct in filing the appeal, failing to withdraw from the case and expending his own funds to prosecute the appeal proves that he himself had not discovered any malpractice at that time. Consequently, it was error to impute that knowledge to his client.
Under these circumstances, I find that Mr. Perez could not have discovered the malpractice until February 26, 1999, when the supreme court denied writs. Only then did prescription begin to run on this claim. Mr. Perez filed his malpractice claim against Mr. Trahant in September 1999, well within the one year prescriptive period.
For these reasons, I would reverse the trial court's judgment granting defendant's exception of prescription. Accordingly, I dissent.
GONZALES, J., concurring.
I believe the analysis of the opinion relative to the peremption periods for legal malpractice is absolutely correct. I concur only to point out my dissatisfaction with the statute. Under this legal scheme, a client is required to file suit against his own attorney at a time when that lawyer is still representing him. In these issues of claimed malpractice involving settlements, seldom is the client in the position to know when and if malpractice has occurred. This law really requires a client to be his own malpractice attorney in order to make the decision to retain an additional attorney while his case is on appeal. The legislature has said for all practical purposes it is not going to allow legal malpractice claims where the malpractice involves a settlement. I respectfully concur.
NOTES
[1] The Honorable Philip C. Ciaccio, Judge (retired), Fourth Circuit Court of Appeal, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] Trahant initially filed a peremptory exception objecting on the basis of prescription on January 24, 2000, prior to the amendment of Perez's petition for damages. On June 8, 2000, along with his answer to Perez's amended petition, Trahant filed peremptory exceptions urging that Perez's petition fails to state a cause of action, Perez has no right of action, and that his "claim against [Trahant] is prescribed and/or perempted." Although the transcript does not explicitly state the scope of the hearing, the show cause order, the trial judge's written reasons for judgment, and the official court minutes indicate that the only matter before the court was the exception of prescription and/or peremption.
[3] The "continuous representation rule" is a suspension principle based on the third application of contra non valentem, which suspends prescription when the debtor has done some act effectually to prevent the creditor from availing himself of his cause of action. Reeder v. North, 97-0239, p. 11 (La.10/21/97), 701 So.2d 1291, 1297-98. As a suspension principle based on contra non valentem, the "continuous representation rule" cannot apply to peremptive periods. This is clear from the wording of La.R.S. 9:5605 ("[t]he one-year and three-year periods of limitations ... are peremptive periods within the meaning of Civil Code Article 3458 and, in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended") and of Civil Code article 3461 ("[p]eremption may not be renounced, interrupted, or suspended.") Id., 97-0219 at p. 12, 701 So.2d at 1298. But see and compare Gettys v. Sessions and Fishman, L.L.P., 00-1077, p. 7 (La.App. 5th Cir. 10/31/00), 772 So.2d 874, 878, writ denied, XXXX-XXXX (La.3/16/01), 787 So.2d 311, applying the continuous representation rule and concluding claimant legal malpractice suit was timely filed.
[4] Apparently, as a further act of the attorney's alleged legal malpractice, Perez averred that Trahant breached the agreement to pay trial court costs, which caused providers to make claims directly against the client. We conclude the trial court's dismissal of the legal malpractice action as untimely based on this allegation of legal malpractice liability is also correct. The record is devoid of any evidence that the expert testimony was cast as court costs in the personal injury action or that a demand to pay the bill was ever made on Perez by the doctor or the clinic. The only evidence consists of Trahant's testimony and a bill requesting payment of Trahant from the Bone & Joint Clinic for "Expert Witness Testimony" in the amount of $2,250, with a copy of a handwritten memo from the clinic to Perez's attorney in this legal malpractice suit, stating the doctor "would appreciate your assistance in settling this matter." Although Trahant acknowledged he advanced court costs on behalf of Perez in the personal injury action, he testified that the bill from the Bone & Joint Clinic was a result of testimony given by "a physician who was a personal friend of [Perez's]. There was no written or verbal agreement on the amount." Thus, the evidence in this record shows only that any dispute about payment of the bill which may exist is between the doctor and Trahant. Perez failed to establish an act, omission, or neglect by Trahant against him which could commence the accrual of the peremptive period.
[5] Louisiana Revised Statute 49:257B provides:

Notwithstanding any other law to the contrary, the attorney general, at his discretion, shall represent or supervise the representation of the interests of the state in any action or proceeding in which the constitutionality of a state statute or of a resolution of the Legislature is challenged or assailed.
[6] In his amended petition, Perez requested, in the form of injunctive relief, the return of his file for the personal injury case from Trahant. At the hearing on the peremptory exception, the parties expanded the scope of the rule to show cause order by permitting evidence, without objection, on the issue of return of the file. And the trial court's written reasons duly addressed the matter. At oral arguments before this court, Perez represented that "part of the file" had, in fact, been returned. Based on the contents of this record, we are unable to ascertain what items, if any, Perez is entitled to that Trahant has not returned. Indeed, the record is devoid of any evidence itemizing the contents of the personal injury file for which Perez claims ownership. On the showing made, we find no error with the trial court's dismissal of the claim for injunctive relief. Additionally, in his appellate brief, Perez formally assigns error to the trial court's dismissal of his request for injunctive relief. After quoting the trial court's written reasons for judgment setting forth its recitation of Rule 1.16(d) of the Louisiana Rules of Professional Conduct, Perez summarily states the dismissal of the claim for preliminary and permanent injunctive relief is wrong as a matter of law, without briefing the matter. This is insufficient to constitute the requisite briefing of the assignment of error as required by Uniform RulesCourts of Appeal, Rule 2-12.4 and, therefore, we may considered it abandoned.
[7] The trial court's reasons for judgment actually cite April 14, 1997 as the date that the jury returned its verdict, but the underlying claim was tried April 14, 15 and 16, 1997. Thus, the jury must have reached its verdict on April 16.
[8] The discussion of "act of malpractice" for purposes of prescription is not intended as an opinion on the merits of Mr. Perez's malpractice claim against Mr. Trahant.